UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CASE ACTION NO. 3:18-CV-265-JRW


NASHAYLA JONES, et al.                                          PLAINTIFFS


vs.**DEFENDANTS BOEHNLEIN, BROWNING, CASSE, COBB, DALE, GRANHOLM,
HOGAN, KING, LEDBETTER, PARKS, PHAN, PRIEL, ROBERTS, ROUTZAHN,
WALKER, WEEDMAN, WELLS, AND ZUMMACH'S MOTION TO DISMISS**

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, *et al*                                       DEFENDANTS


* * * * * * * * * *


Come the Defendants, Jeremy Boehnlein, Aaron Browning, Joel Casse,[1] P. Cobb, Vadim

Dale, Mark Granholm, Brandon Hogan, M. King, David Ledbetter, Shannon Parks, Luke Phan,

Christopher Priel, Anthony Roberts, Brent Routzahn, Scott Walker, Daniel Weedman, Chris

Wells, and Daniel Zummach (hereinafter, collectively referred to as Defendants), by counsel, and

pursuant to Fed. R. Civ. P. 12(b)(6), hereby move the court to dismiss claims in the above-styled

action against these Defendants for failure to state a claim for which relief can be granted. In

support of their Motion to Dismiss, these Defendants state as follows:

### STATEMENT OF THE CASE

Plaintiff originally filed this lawsuit alleging numerous constitutional and state law claims

against Louisville Metro, Louisville Metro Police Department (hereafter, "LMPD") Sergeant

Thomas Schardein, unknown officers of LMPD, Drug Enforcement Administration (hereafter,

"DEA") Special Agent Jennifer Truad and unknown agents of DEA. (*See,* DN 1). Plaintiffs then

---

[1] Plaintiffs' incorrectly identified this Defendant as John Casse in naming him in the Second Amended Complaint.
Counsel for Defendants notified Plaintiffs' counsel of the Defendant Casse's correct first name.

filed an amended complaint. (*See,* DN 17.) With pending motions to dismiss, Plaintiffs then filed a Second Amended Complaint (hereinafter, "Complaint"), which added nineteen LMPD officers as defendants. (*See,* DN 42.) At that time, Plaintiffs voluntarily dismissed DEA Special Agent Truad.

Plaintiffs' Complaint arises from the SWAT execution of a no-knock search warrant at their home. (DN 42, ¶30.) The search warrant was obtained by Defendant Schardein as part of a narcotics investigation. *Id.* at ¶¶ 26-27. As a result of the search warrant and preceding investigation, Plaintiff Nashayla's husband, Jihad Haqq, was arrested and charged with Trafficking in Controlled Substance. *Id.* at ¶ 31. The state criminal charges against Mr. Haqq were ultimately dismissed when he was federally indicted for Distribution of Fentanyl Resulting in Death and Serious Injury. *Id.* at ¶¶ 33-34.

The Complaint does not contain the previously made allegations pertaining to the validity of the search warrant. It appears that the focus of the Complaint is the tactics SWAT officers used in executing the search warrant and the process for determining whether SWAT should be utilized for execution of the warrant. Plaintiffs' allegations include a "play-by-play" of officers going through their home and unnecessary destruction of their property, including one of their dogs.

As a result of the search warrant, Plaintiffs filed a complaint with LMPD's Professional Standards Unit (hereinafter, "PSU") (DN 42, ¶ 83.); the PSU investigates LMPD officers alleged to have violated LMPD Standard Operating Procedures. Plaintiffs allege that the PSU investigation is still ongoing. *Id*.

Plaintiffs claim the moving eighteen Defendants violated their First, Fourth, and Fourteenth Amendment rights and also allege Defendants are liable for the torts of conversion, trespass to chattel, trespass to land, false imprisonment, assault, battery, outrageous conduct, intentional

infliction of emotional distress, and negligence. The Court has dismissed these state law claims against Louisville Metro and the individual Defendants in their official capacity. (DN 44.)

## STANDARD OF REVIEW

A complaint should be dismissed for failure to state a claim for which relief can be granted when it appears beyond doubt that the complaint sets forth no set of facts, which if proved, would entitle the plaintiff to relief.  Federal Rule of Civil Procedure 12(b)(6).  In deciding whether to dismiss a complaint for failing to state a claim for which relief can be granted, the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009); *Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard* v. *Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996).  However, the complaint must allow the court to draw the logical inference that the defendant is liable for the conduct alleged by the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge.  *Id.*, 550 U.S. at 561.

## ARGUMENT

### I.     Plaintiffs' First Amendment Retaliation claim fails as a matter of law.

Plaintiffs have, at best, thinly pled a First Amendment retaliation claim.[2] "For a retaliation claim to survive a motion to dismiss, '[a] § 1983 plaintiff must plead factual allegations sufficient

---

[2] In fact, the only reason Defendants brief this issue herein is due to briefings on the original Complaint and the First Amended Complaint wherein Plaintiffs' argue this point and the addition of the conclusory allegation of a policy of retaliation at DN 42, ¶ 94.

to establish that '(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'' *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 653 (6th Cir. 2014), citing *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)). Plaintiffs' have failed to sufficiently plead the second and third elements of a First Amendment retaliation claim.

An action is adverse when an official's acts "would chill or silence a 'person of ordinary firmness' from future First Amendment activities." *Thaddeus – X v. Blatter*, 175 F.3d, 378, 397 (6th Cir. 1999), quoting *Crawford-El v. Britton*, 951 F.2d 1314, 1322 (D.C. Cir. 1991). Nevertheless, if an alleged adverse action is "inconsequential," and results in nothing more than a *de minimis* injury, the claim is properly dismissed as a matter of law. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012.) A challenged action is inconsequential when it has no consequences whatsoever. *Brown v. Crowley,* 312 F.3d 782, 801 (6th Cir. 2002), *rehg. denied,* 2003.

The third element of a First Amendment retaliation claim requires a causal connection between the protected conduct and the alleged adverse action. Whether a causal connection exists requires a "two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts 'was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Id.*, quoting, *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (quoting *Thaddeus – X v. Blatter*, 175 F.3d, 378,386 (6th Cir. 1999)).

4

The only non-conclusory facts alleged relating to Plaintiffs' PSU complaint are that a complaint was filed, the investigation is ongoing, and that subsequent to filing the complaint, their landlord was contacted to "get dirt" on Plaintiffs. (DN 42, ¶¶ 83-84.) It is not reasonable to infer that the "adverse action" taken against Plaintiffs was contact with their landlord to "get dirt" on Plaintiffs. Plaintiffs do not allege any facts which suggest that the inquiry into their landlord was anything more than "inconsequential." Plaintiffs do not allege any consequences which came from the inquiry into their landlord. Thus, under the second prong, Plaintiffs First Amendment retaliation claim fails as a matter of law.

Even if the inquiry with Plaintiffs' landlord does pass the second prong of a retaliation claim, Plaintiffs' claim fails the third prong because they fail to allege that any of the individual Defendants took any adverse actions nor that the actions were motivated by a "desire to punish." Plaintiffs do not even allege that any of the Defendants were the officers who contacted Plaintiffs' landlord. *Id.*

Plaintiffs have failed to allege any facts that give rise to an adverse action taken against them after filing their complaint with PSU or plead facts that support a causal connection between an alleged adverse action and their protected conduct. On these grounds alone, Plaintiffs' claims should fail.

Alternatively, Plaintiffs have failed to state a First Amendment claim against these Defendants. To be liable under § 1983, an officer must have personally committed a constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). Plaintiffs have failed to identify any officer that contacted their landlord. (DN 42, ¶ 84.) Plaintiffs are merely speculating that one or more of these Defendants contacted their landlord. Such speculation is not sufficient to state a

claim. *Ashcroft*, 556 U.S. at 678, *Twombly,* 550 U.S. at 555. Therefore, Plaintiffs' First Amendment retaliation claim should be dismissed.

## II.    Plaintiffs' Fourteenth Amendment Procedural Due Process claim fails as a matter of law.

To the extent Plaintiffs' claim can be interpreted to include a Fourteenth Amendment procedural due process claim,[3] it is without merit and nonsensical. "To establish a procedural due process violation under 42 U.S.C. § 1983, [Plaintiffs are] required to demonstrate three elements: (1) that it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that it was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford it adequate procedural rights before depriving it of its protected interest." *Wedgewood Ltd. Partnership I v. Township of Liberty, OH*, 610 F.3d 340, 349 (6th Cir. 2010).

A "predeprivation process is only required in cases where predeprivation process is feasible: '[t]he controlling inquiry [into whether predeprivation process must be provided] is solely whether the state is in a position to provide for predeprivation process.'" *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999), quoting, *Hudson v. Palmer*, 468 U.S. 517, 534 (1984). If a pre-deprivation process is not feasible but an adequate postdeprivation process exists, there is no violation of procedural due process. *Id.* at 349, see also, *Hudson,* 468 U.S. at 534. "State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses." *Id.*

---

[3] Louisville Metro does not concede such a claim is presented; however, Louisville Metro chooses to address it in the alternative to ensure all matters are addressed efficiently.

Assuming they have sufficiently pled a protected property interest, Plaintiffs have available to them a postdeprivation remedy.[4] Included in the Complaint are state common law causes of actions against the individual defendants for the destruction of property and alleged First and Fourth Amendment violations. (*See*, DN 42.) Assuming, for the purposes of this Motion only, that there was no predeprivation process, the state tort claims asserted in the Complaint are a sufficient postdeprivation remedy. *See Fox*, 176 F.3d at 349.

Therefore, Plaintiffs' Fourteenth Amendment procedural due process claim fails as a matter of law and should be dismissed against Defendants.

## III.    Plaintiff Nashayla's claims against these Defendants are barred by the statute of limitations.

"[I]n Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir.1990)." The assault, false imprisonment, and battery claims are also limited by the one-year limitation period. KRS 413.140(1)(a). The trespass to chattel and conversion claims are limited by a two-year limitation period. KRS 413.125.

The use of John Doe, Jane Doe, or Unknown Defendants is not a sufficient device to stay the limitations period from running.  Plaintiffs' original complaint named Louisville Metro, Thomas Schardein, and Unknown Officers of Louisville Metro Police Departments as defendants. The information contained in their pleading is not the same as naming a party.

In *Smith v. City of Akron,* 476 Fed. App'x. 67, 69 (6th Cir. 2012)(unpublished)[5]:

> The problem with Smith's amended complaint is that adding new, previously unknown defendants in place of "John Doe" defendants "is considered a change in parties, not a mere substitution of parties," and "such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)[ ]." *Cox v.*

---

[4] Louisville Metro does not concede that Plaintiffs have sufficiently pled a protected property interest pursuant to a claim under the Due Process Clause of the Fourteenth Amendment.
[5] Pursuant to Fed. R. of Appellate P. 32.1, a copy of the unpublished opinion is attached at Exhibit 1.

*Treadway,* 75 F.3d 230, 240 (6th Cir.1996). Smith did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and apparently did not find out within the two-year limitations period. The relation-back protections of Rule 15(c) were not designed to correct *that* kind of problem. *See In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449–50 (6th Cir.1991); *Cox,* 75 F.3d at 240; *Moore v. Tennessee,* 267 Fed.Appx. 450, 455 (6th Cir.2008).

Federal Rule of Civil Procedure 15 "allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations. [The Sixth Circuit's] approach is consistent with the holdings of every other circuit on this issue. *See Wilson v. U.S. Gov't,* 23 F.3d 559, 563 (1st Cir.1994); *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995); *Locklear v. Bergman & Beving AB,* 457 F.3d 363, 367 (4th Cir.2006); *Jacobsen v. Osborne,* 133 F.3d 315, 320–21 (5th Cir.1998); *Baskin v. City of Des Plaines,* 138 F.3d 701, 704 (7th Cir.1998); *Foulk v. Charrier,* 262 F.3d 687, 696 (8th Cir.2001); *Garrett v. Fleming,* 362 F.3d 692, 696 (10th Cir.2004); *Wayne v. Jarvis,* 197 F.3d 1098, 1103–04 (11th Cir.1999)." *Id*. at 70.

Plaintiffs' Second Amended Complaint naming the Defendant Officers was filed on September 27, 2019 and the summons issued thereafter. The statute of limitations on Plaintiff Nashayla's claims under § 1983, assault, false imprisonment, and battery ran out on or about April 26, 2018 and her claims for trespass to chattel and conversion ran out on or about April 26, 2019.

Therefore, Plaintiff Nashayla's claims against Defendants Boehnlein, Browning, Casse, Cobb, Dale, Granholm, Hogan, King, Ledbetter, Parks, Phan, Priel, Roberts, Routzahn, Walker, Weedman, Wells, and Zummach for assault, battery, trespass to chattel, false imprisonment, conversion, and all those brought under § 1983, should be dismissed.

**IV.    Plaintiffs have failed to sufficiently plead a Fourth Amendment unlawful search claim against Defendants.**

Plaintiffs also allege Defendants engaged in "the unlawful search of the Plaintiffs' residence." (DN 42, Count 1.)

The Fourth Amendment only precludes unreasonable government searches. *Relford v. Lexington-Fayette Urban Cty. Gov't*, 390 F.3d 452, 458 (6th Cir. 2004) citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). "[P]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that the official belief in the existence of probable cause is unreasonable." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018), quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989.) This is because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Id.*, quoting *Messerschmidt v. Millender*, 565 U.S. 546 (2012).

Plaintiffs have failed to allege that the search warrant was unreasonable nor that it was so lacking in probable cause on its face that a reasonable police officer's belief in the existence of probable cause would be unreasonable. Therefore, Plaintiffs claim of unlawful search under the Fourth Amendment should be dismissed.

## V.     Plaintiffs have failed to sufficiently plead a Fourth Amendment unlawful seizure claim against all Defendants.

The Fourth Amendment protects against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 396 (1989.) "Officers violate the Fourth Amendment when they use 'excessive force in the execution of a search warrant.'" *Moore v. City of Memphis*, 853 F.3d 866, 870 (6th Cir. 2017), quoting *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013)(citation omitted). "An officer's use of force is excessive if, under the totality of circumstances, the force was objectively unreasonable." *Id.*, citing *Livermore ex rel. Rohm v. Lubelan*, 476, F.3d 397, 404 (6th Cir. 2007.)

"To determine whether an excessive force  violation has occurred, [the Court] appl[ies] 'the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and no with 20/20 hindsight.'" *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019), quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).

The test for determining the reasonableness of an officer's actions must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. quoting *Scott v. Harris*, 127 S. Ct. 1769, 1778 (2007). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007), quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). Courts must analyze the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. quoting *Graham*, 490 U.S. at 396.

Officers cannot be held liable for the actions of other officers; "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citing *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008)). "To hold an officer liable for excessive force, the plaintiff 'must prove that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" *Id*. citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). An officer's "mere presence" "without a showing of direct responsibility

for the action, will not subject an officer to liability." *Id.* quoting *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).

Plaintiffs allege Defendants used excessive force in forcing entry to their home through various doors and windows, the use of flash bangs, and in detaining them upon entry. (DN 44, ¶¶ 44-70.)

### a. Plaintiffs failed to sufficiently plead Defendants used excessive force in gaining entry to the residence.

Plaintiffs allege that Walker broke the door on the left side of the house open so that he, Phan, and Boehnlein could make entry. (DN 44, ¶ 44.) After additional officers made entry, Parks broke down an interior door on the second floor hallway. *Id.* at ¶ 52. Weedman, Browning, Zummach, Cobb, and Wells were part of a secondary breach team that entered the home by breaking down the front door. *Id.* at ¶ 56.

Present for the execution of this search warrant also, were Granholm, Ledbetter, King, and Roberts as part of the "rake and break" team. *Id.* at ¶ 60. These four officers broke windows at the basement level, into Plaintiff Nascyauni's window, and a dining room window. *Id.* Plaintiffs do not allege any facts that indicate Defendants Casse, Dale, Hogan, Priel, and Routzahn took any action in gaining entry to their home. Thus, these claims should be dismissed against Casse, Dale, Hogan, Priel, and Routzahn.

Defendants knew going in to execute this search warrant that the subject of the underlying investigation was believed to be involved in narcotics trafficking. (DN 44, ¶ 27.) Officers also knew that the subject of the investigation had a history of violent criminal offenses. *Id.* at ¶ 30. As a result of these, and possibly other currently unidentified factors, Defendant Schardein was judicially granted a no-knock search warrant. *Id.*

While the reasonableness standard does generally require a knock-and-announce before executing a search warrant by forcible entry, this requirement must give way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *U.S. v. Banks*, 540 U.S. 31, 36 (2003), quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997.) The Supreme Court further recognized that as a result of the exigency exception to the knock-and-announce rule, a judge is well within the Constitution to authorize a warrant applicant to execute a "no-knock" entry. *Id.* Thus, "[s]ince most people keep their doors locked, entering without knocking will normally do some damage[.]" *Id.* at 37.

In an unpublished opinion,[6] the Sixth Circuit Court of Appeals adopted this court's analysis that it made sense for SWAT to secure all entrances and exits to a building. *Ramage v. Louisville/Jefferson Cnty. Metro Gov't,* 520 Fed.Appx. 341, 347 (2013). In that case, the front door had been unlocked, yet SWAT also broke down the back door. *Id.* The district court explained that "[e]ntering the building from both points could provide more officers in more locations to ensure safety. Without [SWAT team members] entering through the back door, individuals in the home could have surprised officers as they entered from the front." *Id.*

Plaintiffs' indicate that their home had at least three levels plus an attic space. (DN 44, ¶¶ 59 and 71.) Defendants had been authorized to make entry to a residence where a suspect, with a violent criminal history, was known to reside and suspected of narcotics trafficking. Just as in *Ramage*, it was reasonable for the Defendants to secure all entrances to the house and gain visual by breaking windows to ensure safety for themselves and the occupants. While more doors and

---

[6] Pursuant to Fed. R. of Appellate P. 32.1, a copy of the unpublished opinion is attached at Exhibit 2.

windows were ultimately damaged in this instance than in *Ramage*, Plaintiffs' home was a large home with numerous floors and unknown individuals within. For these reasons, these claims should be dismissed against Walker, Parks, Weedman, Browning, Zummach, Cobb, Wells, Granholm, Ledbetter, King, and Roberts as the actions they took to gain entry and visual inside the home was objectively reasonable.

**b. Defendants use of flash bangs was objectively reasonable.**

Plaintiffs allege that Parks threw a flash bang into the kitchen upon entry to the home. (DN 444, ¶ 51.) A second successive flash bang was thrown by Cobb when he made entry through the front door. *Id.* at ¶ 57. At the time of the flash bangs, Plaintiff Nashayla was in her bedroom in the basement of the home and Plaintiff Nascyauni was in her bedroom on the second floor of the home. *Id.* at ¶¶ 57 and 62.

"To determine whether an officer's use of flash-bangs was reasonable, [the Court must'] balance the officer's interest in using them against the suspect's interest in forbearance." *Moore v. City of Memphis*, 853 F.3d 866, 871 (6th Cir. 2017), citing, *Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 569 (6th Cir. 2006.)

The Complaint reflects that both flash bangs were used as Cobb and Parks made entry to different areas of the home. (DN 44, ¶¶ 51 and 57.) At that time, it appears that officers had not yet encountered any individuals within the home and were still facing a number of unknown factors in a large house. By utilizing the flash bangs, which did not cause any harm or injury to Plaintiffs as they were on different floors from where they were used, Parks and Cobb were able to effectively wake up anyone in the house and make them aware to their presence, thus serving to minimize risk to everyone. Thus, the use of the flash bangs were objectively reasonable and these

claims against Parks and Cobb should be dismissed. *See, Krause v. Jones*, 765 F.3d 675 (6th Cir. 2014.)

    **c. Plaintiffs failed to sufficiently plead excessive force used to detain them.**

Plaintiffs also allege that Defendants violated the Fourth Amendment by using excessive force in detaining them. Plaintiff Nashayla alleges that Dale, Phan, Hogan, Routzahn, Casse, and Walker encountered her in her bedroom, trained their laser beads on her as she tried to cover herself with a sheet. (DN 44, ¶ 53.) Plaintiff Nascyauni alleges that Weedman, Wells, Ledbetter, King, and Granholm held her at gunpoint for up to five minutes in her bedroom. *Id.* at ¶¶ 67-68.

The United States Supreme Court has held that a valid search warrant implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The Supreme Court recognized that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants [of the home] is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03. The existence of a search warrant "provides an objective justification for the detention." *Id.* at 703. Such detention is appropriate because "the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Muehler v. Mena*, 544 U.S. 93, 98 (2005).

The detainment of both Plaintiffs is plainly permissible. *Id.*, citing *Summers*, 452 U.S. at 705. Officers were also entitled to use reasonable force to effectuate the detention. *Id.*, citing *Graham v. Connor*, 490 U.S. 386, 396 (1989.)

Plaintiff Nascyauni alleges she was held at gunpoint for up to five minutes. (DN 44, ¶ 68.) The Complaint also indicates that she was being commanded to put her hands up, but she

seemingly refused to comply with that request as she states she held onto a dog. *Id.* at ¶¶ 66-67. Plaintiff Nashayla was moving around trying to cover herself with a bed sheet and walking around trying to get to the bathroom (*Id.* at ¶ 53); Plaintiff Nashayla was not complying with officers commands and all the moving around creates an unknown for them. While there is no indication of how long Plaintiff Nashayla was being held at gunpoint, she does not allege that she was held at gunpoint once she was handcuffed and taken outside. *Id.* at ¶ 69.

The Court in *Vanderhoef v. Dixon* cites other cases as examples of when officers holding occupants of a home at gunpoint in the execution of a search warrant is objectively unreasonable and constituted violation of the Fourth Amendment. 938 F.3d 271, 279-81 (6th Cir. 2019). In the cited cases therein, it was determined to be objectively unreasonable when the officers were holding occupants of a home at gunpoint for anywhere from fifteen minutes to an hour while officers were searching the home or in situations where the risk of flight and risk to the officers had subsided. *Id.* citing *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010.)

The purpose of detaining occupants of a home pursuant to a search warrant is to provide officers with control of the situation so that they make keep themselves and the occupants safe. *See*, *Muehler*, *supra.* With Plaintiff Nascyauni refusing to cooperate, it was objectively reasonable to detain her at gunpoint for five minutes. During this time, officers were continuing to secure the home and moving Plaintiff Nashayla and the others out of the residence. This was a reasonable intrusion on Plaintiff Nascyauni's Fourth Amendment rights.

Plaintiff Nashayla's detention at gunpoint was also objectively reasonable. Her movements, as described within the Complaint, are not indicative of being compliant with officers. The record also indicates that once she was handcuffed, to which she makes no complaint of, she was no longer being held at gunpoint. This further substantiates the reasonableness of the officers'

actions; once they were able to get her secured to minimize risk to themselves and her, they no longer felt it necessary to hold her at gunpoint, thus detaining her with the least intrusive means necessary.

**VI.     Plaintiffs' state law tort claims should be dismissed against some Defendants.**

Plaintiffs also allege a myriad of state law tort actions against Defendants. (DN 42, Count 2.) These claims include false imprisonment, assault, battery, trespass to chattel, conversion, trespass to land, outrageous conduct, intentional infliction of emotional distress, and negligence. (DN 42, ¶ 2.)

While some of the claims do not have sufficient factual allegations against certain Defendants, other Defendants are entitled to qualified immunity. Public officials acting in their official capacity and performing discretionary functions have qualified immunity from individual liability for damages resulting from discretionary functions. *Davis v. Holly*, 835 F.2d 1175 (6th Cir. 1987). The doctrine of qualified immunity provides that the public official cannot be sued individually unless the conduct in question violates a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The statutory or constitutional right allegedly violated must be so clearly established when the conduct was committed that any official in the defendant's position would understand that his conduct violates those rights. *Anderson v. Creighton*, 483 U.S. 635 (1987).

The qualified immunity doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Harlow v. Fitzgerald, supra*. If officers of reasonable competence could disagree on whether the conduct was lawful, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335 (1986). The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court. *Heflin v. Stewart County, Tenn.*,

958 F.2d 709, 717 (6th Cir. 1992).  Assuming a violation of Plaintiffs' rights is found, Defendants

are entitled to qualified immunity.

### a.  Plaintiffs' false imprisonment claims against Defendants should be dismissed.

False imprisonment is the deprivation of the liberty of one person by another or detention

for however short a time without such person's consent and against his will, whether done by

actual violence, threats, or otherwise. *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky.

App. 1977). Plaintiffs have failed to plead any facts that Boehnlein, Roberts, or Zummach acted

to deprive Plaintiffs of their liberty. Therefore, Plaintiffs claims of false imprisonment against

Boehnlein, Roberts, and Zummach should be dismissed.

As explained in Section V(c), *supra*, Plaintiffs false imprisonment claims against the

remaining Defendants should be dismissed pursuant to the categorical right of detention pursuant

to a search warrant. *See*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

### b.  Plaintiffs assault claims against Defendants should be dismissed.

"Assault is a tort which merely requires the threat of unwanted touching of the victim,

while battery requires an actual unwanted touching." *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky.

App. 2006), quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). Plaintiffs have failed

to plead any facts that Boehnlein, Roberts, or Zummach threatened to touch them or took any

action that constituted a threat of touching them. Therefore, Plaintiffs claims of assault against

Boehnlein, Roberts, and Zummach should be dismissed.

As explained in Section V(c), *supra*, Plaintiffs' assault claims against the remaining

Defendants should be dismissed pursuant to the categorical right of detention pursuant to a search

warrant, which can be argued to necessarily include a threat of unwanted touching. *See*, *Michigan*

*v. Summers*, 452 U.S. 692, 705 (1981).

### c.  Plaintiffs battery claims against all Defendants should be dismissed.

The tort of battery "requires an actual unwanted touching." *Id*. Plaintiffs have failed to plead any facts that Boehnlein, Browning, Cobb, Granholm, King, Ledbetter, Parks, Priel, Roberts, Weedman, Wells, or Zummach actually touched them. Therefore, Plaintiffs claims of battery against Boehnlein, Browning, Cobb, Granholm, King, Ledbetter, Parks, Priel, Roberts, Weedman, Wells, and Zummach should be dismissed.

As explained in Section V(c), *supra*, Plaintiffs' battery claims against the remaining Defendants should be dismissed pursuant to the categorical right of detention pursuant to a search warrant, which can be argued to necessarily include an actual unwanted touching. *See*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

### d. Plaintiffs' claims for trespass to chattel against Boehnlein, Browning, Parks, and Zummach.

A trespass to chattel requires a defendant's intentional interference with the personal property in the possession of the plaintiff and the property's condition, quality, or value has been impaired. *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872 (Ky. App. 2012). Plaintiffs have failed to plead any facts that Boehnlein, Browning, Parks, and Zummach intentionally interfered with and damaged Plaintiffs' personal property. Therefore, Plaintiffs claims of trespass to chattel against Boehnlein, Browning, Parks, and Zummach should be dismissed.

### e. Plaintiffs' claims for conversion against Boehnlein, Browning, Parks, and Zummach.

Conversion is generally defined as "the wrongful exercise of dominion and control over the property of another." *Jasper v. Blair,* 492 S.W.3d 579, 582 (Ky. App. 2016). Plaintiffs have failed to plead any facts that Boehnlein, Browning, Parks, and Zummach wrongfully exercised dominion and control over their property. Therefore, Plaintiffs claims of trespass to chattel against Boehnlein, Browning, Parks, and Zummach should be dismissed.

**f.   Plaintiffs' claims for intentional infliction of emotional distress should be dismissed.**

Intentional infliction of emotional distress falls under the tort of outrage, which is a "gap-filler providing redress for extreme emotional distress in those instances in which the traditional common law actions did not." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993.)

> Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action. The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up.

*Id.* Plaintiffs have not alleged that Defendants acted with intent to cause extreme emotional distress to the Plaintiffs. The facts alleged do not suggest that Defendants acted with intent to cause extreme emotional distress to the Plaintiffs. This claim should be dismissed for failing to sufficiently allege facts to support it. Alternatively, to the extent a claim under one of the traditional torts moves forward, this claim should be dismissed.

**g.   Plaintiffs' claims for negligence against Defendants should be dismissed.**

Plaintiffs also generally allege that Defendants were negligent and substantially disregarded a significant risk to their safety. (DN 42, ¶ 115.) "Actionable negligence consists of a duty, a violation thereof, and consequent injury." *Illinois Central R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). Other than conclusory statements, Plaintiffs have failed to allege specific facts that Defendants violated their duty to act as a reasonable police officer. Therefore, Plaintiffs' claims against Defendants for general negligence should be dismissed.

**h.   Plaintiffs' claims for trespass to land against Defendants should be dismissed.**

Plaintiffs make generalized allegations that Defendants committed the state tort of trespass to land. However, as discussed in Section IV, *supra*, Defendants made entry to Plaintiffs' land pursuant to a search warrant. Thus, without any factual allegations implying that Defendants should have known or did know that the search warrant was invalid, the search warrant authorizing them to make entry on Plaintiffs' land provides Defendants with qualified immunity for liability arising from this tort.

## **CONCLUSION**

For the foregoing reasons, Defendants Boehnlein, Browning, Casse, Cobb, Dale, Granholm, Hogan, King, Ledbetter, Parks, Priel, Roberts, Routzahn, Walker, Weedman, Wells, and Zummach respectfully requests this Honorable Court to enter the attached order granting their Motion to Dismiss.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY: /s/ Annale R. Taylor_____
     Annale R. Taylor
     Peter F. Ervin
     Assistant Jefferson County Attorneys
     Fiscal Court Building
     531 Court Place, Suite 900
     Louisville, Kentucky 40202
     (502) 574-8083 (ART)
     (502) 574-6621 (PFE)
     annale.taylor@louisvilleky.gov
     peter.ervin@louisvilleky.gov
     *Counsel for Defendants*

**<u>CERTIFICATE</u>**

I hereby certify that on December 15, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will automatically send copies to all counsel of record.


<u>s/ Annale R. Taylor</u>
Annale R. Taylor