**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CASE ACTION NO. 3:18-CV-265-JRW**

**NASHAYLA JONES, et al.**                                                                   **PLAINTIFFS**

vs.              **DEFENDANT SEYMOUR'S MOTION TO DISMISS**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT,** *et al*                                                    **DEFENDANTS**

* * * * * * * * * *

Comes the Defendant, John Seymour, by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move the court to dismiss claims in the above-styled action against him for Plaintiffs' failure to state a claim for which relief can be granted. In support of his Motion to Dismiss, Seymour states as follows:

**STATEMENT OF THE CASE**

Plaintiff originally filed this lawsuit alleging numerous constitutional and state law claims against Louisville Metro, Louisville Metro Police Department (hereafter, "LMPD") Sergeant Thomas Schardein, unknown officers of LMPD, Drug Enforcement Administration (hereafter, "DEA") Special Agent Jennifer Truad and unknown agents of DEA. (*See,* DN 1). Plaintiffs then filed an amended complaint. (*See,* DN 17.) With pending motions to dismiss, Plaintiffs then filed a Second Amended Complaint (hereinafter, "Complaint"), which added nineteen LMPD officers as defendants, including this Defendant, Seymour. (*See,* DN 45.) At that time, Plaintiffs voluntarily dismissed DEA Special Agent Truad.

1

Plaintiffs' Complaint arises from the SWAT execution of a no-knock search warrant at their home. (DN 45, ¶30.) The search warrant was obtained by Defendant Schardein as part of a narcotics investigation. *Id.* at ¶¶ 26-27. As a result of the search warrant and preceding investigation, Plaintiff Nashayla's husband, Jihad Haqq, was arrested and charged with Trafficking in Controlled Substance. *Id.* at ¶ 31. The state criminal charges against Mr. Haqq were ultimately dismissed when he was federally indicted for Distribution of Fentanyl Resulting in Death and Serious Injury. *Id.* at ¶¶ 33-34.

The Complaint does not contain the previously made allegations pertaining to the validity of the search warrant. It appears that the focus of the Complaint is the tactics SWAT officers used in executing the search warrant and the process for determining whether SWAT should be utilized for execution of the warrant. Plaintiffs' allegations include a "play-by-play" of officers, including Seymour, going through their home and unnecessary destruction of their property, including one of their dogs.

As a result of the search warrant, Plaintiffs filed a complaint with LMPD's Professional Standards Unit (hereinafter, "PSU") (DN 45, ¶ 83.); the PSU investigates LMPD officers alleged to have violated LMPD Standard Operating Procedures. Plaintiffs allege that the PSU investigation is still ongoing. *Id*.

Plaintiffs claim Seymour violated their First, Fourth, and Fourteenth Amendment rights and also allege Seymour is liable for the torts of conversion, trespass to chattel, trespass to land, false imprisonment, assault, battery, outrageous conduct, intentional infliction of emotional distress, and negligence. The Court has dismissed these state law claims against Louisville Metro and the individual Defendants in their official capacity. (DN 44.)

## STANDARD OF REVIEW

A complaint should be dismissed for failure to state a claim for which relief can be granted when it appears beyond doubt that the complaint sets forth no set of facts, which if proved, would entitle the plaintiff to relief. Federal Rule of Civil Procedure 12(b)(6). In deciding whether to dismiss a complaint for failing to state a claim for which relief can be granted, the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009); *Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard* v. *Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996). In order for a plaintiff to be successful on a 12(b)(6) motion, the complaint must allow the court to draw the logical inference that the defendant is liable for the conduct alleged by the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge. *Id.* at 561.

## ARGUMENT

**I.      Plaintiffs' First Amendment Retaliation claim fails as a matter of law.**

For the sake of brevity, Seymour adopts and incorporates herein the argument presented by his co-Defendants regarding Plaintiffs' First Amendment retaliation claim found at DN 59, Section I and DN 50, Section II.

Alternatively, if the Court were to find Plaintiffs successfully pled a First Amendment retaliation claim, the claim should still be dismissed for failure to state a claim against Seymour. To be liable under § 1983, an officer must have personally committed a constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). Plaintiffs have failed to allege that Seymour

contacted their landlord or took adverse action towards them subsequent to their filing a Professional Standards Unit complaint. (DN 45, ¶ 84.) Plaintiffs merely speculate that it may have been Seymour that contacted their landlord. Such speculation is not sufficient to state a claim. *Ashcroft*, 556 U.S. at 678; *see also, Twombly,* 550 U.S. at 555. Therefore, Plaintiffs' First Amendment retaliation claim should be dismissed.

## II.     Plaintiffs' Fourteenth Amendment Procedural Due Process claim fails as a matter of law.

For the sake of brevity, Seymour adopts and incorporates herein the argument presented by his co-Defendants regarding Plaintiffs' Fourteenth Amendment procedural due process claim found at DN 50, Section IV and DN 59, Section II.

## III.    Plaintiff Nashayla's claims against Seymour are barred by the statute of limitations.

"[I]n Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir.1990)." The torts of assault, false imprisonment, and battery also have a one-year statute of limitations. KRS 413.140(1)(a). The torts of trespass to chattel and conversion have a two-year statute of limitations. KRS 413.125.

The use of John Doe, Jane Doe, or Unknown Defendants is not a sufficient device to stay the limitations period from running. Plaintiffs' original complaint named Louisville Metro, Thomas Schardein, and Unknown Officers of Louisville Metro Police Departments as defendants. The information contained in their pleading is not the same as naming a party.

In *Smith v. City of Akron,* 476 Fed. App'x. 67, 69 (6th Cir. 2012)(unpublished)[1]:

> The problem with Smith's amended complaint is that adding new, previously unknown defendants in place of "John Doe" defendants "is considered a change in parties, not a mere substitution of parties," and "such amendments do

---

[1] Pursuant to Fed. R. of Appellate P. 32.1, a copy of the unpublished opinion is attached at Exhibit 1.

not satisfy the 'mistaken identity' requirement of Rule 15(c)[ ]." *Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.1996). Smith did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and apparently did not find out within the two-year limitations period. The relation-back protections of Rule 15(c) were not designed to correct *that* kind of problem. *See In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449–50 (6th Cir.1991); *Cox,* 75 F.3d at 240; *Moore v. Tennessee,* 267 Fed.Appx. 450, 455 (6th Cir.2008).

Federal Rule of Civil Procedure 15 "allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations. [The Sixth Circuit's] approach is consistent with the holdings of every other circuit on this issue. *See Wilson v. U.S. Gov't,* 23 F.3d 559, 563 (1st Cir.1994); *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995); *Locklear v. Bergman & Beving AB,* 457 F.3d 363, 367 (4th Cir.2006); *Jacobsen v. Osborne,* 133 F.3d 315, 320–21 (5th Cir.1998); *Baskin v. City of Des Plaines,* 138 F.3d 701, 704 (7th Cir.1998); *Foulk v. Charrier,* 262 F.3d 687, 696 (8th Cir.2001); *Garrett v. Fleming,* 362 F.3d 692, 696 (10th Cir.2004); *Wayne v. Jarvis,* 197 F.3d 1098, 1103–04 (11th Cir.1999)." *Id*. at 70.

Plaintiffs' Second Amended Complaint naming Seymour was filed on September 27, 2019 and the summons issued thereafter. The statute of limitations on Plaintiff Nashayla's claims under § 1983 (specifically, the First, Fourth, and Fourteenth Amendment claims), assault, false imprisonment, and battery ran out on or about April 26, 2018 and her claims for trespass to chattel and conversion ran out on or about April 26, 2019.

Therefore, Plaintiff Nashayla's claims against Seymour for assault, battery, trespass to chattel, false imprisonment, conversion, and all those brought under § 1983, should be dismissed.

**IV.     Plaintiffs have failed to sufficiently plead a Fourth Amendment unlawful search claim against Seymour.**

5

Plaintiffs also allege Seymour engaged in "the unlawful search of the Plaintiffs' residence." (DN 45, Count 1.)

The Fourth Amendment only precludes unreasonable government searches. *Relford v. Lexington-Fayette Urban Cty. Gov't*, 390 F.3d 452, 458 (6th Cir. 2004) citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). "[P]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that the official belief in the existence of probable cause is unreasonable." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018), quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989.) This is because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Id.*, quoting *Messerschmidt v. Millender*, 565 U.S. 546 (2012).

Plaintiffs have failed to allege neither that the search warrant was unreasonable nor that it was so lacking in probable cause on its face that a reasonable police officer's belief in the existence of probable cause would be unreasonable. Therefore, Plaintiffs claim of unlawful search under the Fourth Amendment should be dismissed against Seymour.

**V.     Plaintiffs have failed to sufficiently plead a Fourth Amendment seizure claim against Seymour.**

The Fourth Amendment protects against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 396 (1989.) "Officers violate the Fourth Amendment when they use 'excessive force in the execution of a search warrant.'" *Moore v. City of Memphis*, 853 F.3d 866, 870 (6th Cir. 2017), quoting *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013)(citation omitted). "An officer's use of force is excessive if, under the totality of circumstances, the force was objectively unreasonable." *Id.*, citing *Livermore ex rel. Rohm v. Lubelan*, 476, F.3d 397, 404 (6th Cir. 2007.)

6

"To determine whether an excessive force violation has occurred, [the Court] appl[ies] 'the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.'" *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019), quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).

The test for determining the reasonableness of an officer's actions must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. quoting *Scott v. Harris*, 127 S. Ct. 1769, 1778 (2007). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007), quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). Courts must analyze the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. quoting *Graham*, 490 U.S. at 396.

Officers cannot be held liable for the actions of other officers; "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citing *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008)). "To hold an officer liable for excessive force, the plaintiff 'must prove that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" *Id*. citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). An officer's "mere presence" "without a showing of direct responsibility

7

for the action, will not subject an officer to liability." *Id.* quoting *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).

Plaintiffs allege Seymour used excessive force in forcing entry to their home through a door, detaining them upon entry, and shooting their dog Cashus. (DN 45, ¶¶ 44-70.)

### a. Plaintiffs failed to sufficiently plead Seymour used excessive force in gaining entry to the residence.

Plaintiffs allege that Walker broke the door on the left side of the house open so that Seymour could enter the home. (DN 45, ¶ 44.) Plaintiffs do not allege any facts that indicate Seymour took any action in gaining entry to their home. Thus, this claim should be dismissed against Seymour.

### b. Plaintiffs failed to sufficiently plead Seymour used excessive force used to detain them.

Plaintiffs also allege that Defendants violated the Fourth Amendment by using excessive force in detaining them. Plaintiff Nashayla alleges that Seymour encountered her in her bedroom, trained his laser beads on her as she tried to cover herself with a sheet. (DN 45, ¶ 53.)

The United States Supreme Court has held that a valid search warrant implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The Supreme Court recognized that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants [of the home] is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03. The existence of a search warrant "provides an objective justification for the detention." *Id.* at 703. Such detention is appropriate because "the character of

8

the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Muehler v. Mena*, 544 U.S. 93, 98 (2005.)

The detainment of Plaintiff Nashayla is plainly permissible. *Id.*, citing *Summers*, 452 U.S. at 705. Officers were also entitled to use reasonable force to effectuate the detention. *Id.*, citing *Graham v. Connor*, 490 U.S. 386, 396 (1989.)

Plaintiff Nashayla was moving around trying to cover herself with a bed sheet and walking around trying to get to the bathroom (*Id.* at ¶ 53); Plaintiff Nashayla was not complying with the officers' commands and created an unknown risk for officers when she continued moving around. While there is no indication of how long Plaintiff Nashayla was being held at gunpoint, she does not allege that she was held at gunpoint once she was handcuffed and taken outside. *Id.* at ¶ 69.

The Court in *Vanderhoef v. Dixon* cites other cases as examples of when officers holding occupants of a home at gunpoint during the execution of a search warrant is objectively unreasonable and thus constituted a violation of the Fourth Amendment. 938 F.3d 271, 279-81 (6th Cir. 2019.) In the cases cited therein, it was determined to be objectively unreasonable when the officers were holding occupants of a home at gunpoint for anywhere from fifteen minutes to an hour while officers were searching the home and in situations where the flight risk of the suspect and risk to the officers' safety had subsided. *Id.,* citing *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010.)

Plaintiff Nashayla's detention at gunpoint was objectively reasonable. Her movements, as described within the Complaint, are not indicative of being compliant with officer commands. (DN 45, ¶ 53.) The record also indicates that once she was handcuffed, to which she makes no complaint of, she was no longer being held at gunpoint. This further substantiates the reasonableness of the officers' actions; once officers were able to secure Plaintiff Nashayla, the risk to their and her

9

safety was lessened, and they knew it was no longer necessary to hold her at gunpoint. This is an illustration of detaining an individual with the least intrusive means necessary as a situation unfolds.

As for Plaintiff Nascayauni, there are no allegations that Seymour even made contact with her. Rather, Plaintiffs specifically allege that Defendants Weedman, Wells, Granholm, Ledbetter, and King were the officers that had contact with Plaintiff Nascayauni. (DN 45, ¶67.) Thus, Nascayuni's claim of excessive force against Seymour should be dismissed.

### c. Seymour's seizure of Plaintiffs' animal Cashus was objectively reasonable.

Plaintiffs allege that during the search Seymour shot and killed Plaintiffs' therapy animal, Cashus. "[A] police officer's use of deadly force against a dog while executing a warrant to search a home for illegal drug activity is reasonable under the Fourth Amendment when, given the totality of the circumstances and viewed from the perspective of an objectively reasonable officer, the dog poses an imminent threat to the officer's safety. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 568 (6th Cir. 2016). The *Brown* court defined "imminent danger" as "'an immediate, real threat to one's safety that justifies the use of force in self-defense,' or 'the danger resulting from an immediate threatened injury sufficient to cause a reasonable and prudent person to defend himself or herself.'" *Id.* at 567, quoting *Imminent Danger*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Seymour's use of force against Cashus was reasonable and does not constitute the unlawful seizure of the animal. When the Defendants entered the home, the two dogs were in the basement, (DN 45, ¶ 62.) The dogs started running upstairs; so Ledbetter asked Plaintiff Nashayla to control the dogs. (DN 45, ⁋ 63.) In an attempt to control the situation and minimize the risk posed to everyone, Ledbetter, Dale, and Seymour attempted to block the stairs and prevent the dogs from

10

running upstairs where other officers were securing the house. *Id.* at ¶ 64. However, the dogs got past the officers and continued running upstairs to the kitchen area. *Id.*

At that point, Dale shot at and ultimately missed Cashus. *Id.* at ¶ 65. The dogs still running around, Seymour shot Cashus. *Id.* Sill running around, other officers fired shots at Cashus. *Id.* Cashus came running back into the kitchen where Seymour was located and Seymour ultimately shot and killed him. *Id.*

At that time, Seymour could have reasonably believed that the dogs posed an imminent threat to him as well as other officers conducting the search as it was not able to be controlled. Therefore, Plaintiffs' claim of unlawful seizure against Seymour should be dismissed.

## VI. Some of Plaintiffs' state law tort claims should be dismissed against Seymour.

Plaintiffs also allege a myriad of state common law torts against Seymour. (DN 45, Count 2.) These claims include false imprisonment, assault, battery, trespass to chattel, conversion, trespass to land, outrageous conduct, intentional infliction of emotional distress, and negligence. (DN 45, ¶ 2.)

Plaintiffs allege Seymour entered the home through the back door and helped provide tactical cover for the first and second team as they entered the kitchen. (DN 45, ¶ 49.) Seymour proceeded to enter Plaintiff Nashayla's bedroom where he aided in detaining her while the home was secured. (DN 45, ¶ 52-53.) After an unknown amount of time, Plaintiffs allege that Seymour made his way back into the kitchen, where he shot and eventually killed Plaintiffs' dog Cashus. (DN 45, ¶ 65.)

Seymour is entitled to qualified immunity. Public officials acting in their official capacity and performing discretionary functions have qualified immunity from individual liability for damages resulting from discretionary functions. *Davis v. Holly*, 835 F.2d 1175 (6th Cir. 1987).

The doctrine of qualified immunity provides that the public official cannot be sued individually unless the conduct in question violates a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The statutory or constitutional right allegedly violated must be so clearly established when the conduct was committed that any official in the defendant's position would understand that his conduct violates those rights. *Anderson v. Creighton*, 483 U.S. 635 (1987).

The qualified immunity doctrine protects all but the plainly incompetent or those who knowingly violate the law. *Harlow v. Fitzgerald, supra*. If officers of reasonable competence could disagree on whether the conduct was lawful, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335 (1986). The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court. *Heflin v. Stewart County, Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992). Assuming a violation of Plaintiffs' rights is found, Seymour is entitled to qualified immunity.

### a. Plaintiffs' false imprisonment claims against Seymour should be dismissed.

False imprisonment is the deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats, or otherwise. *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky. App. 1977). As explained in Section V(b), *supra*, Plaintiffs false imprisonment claim against Seymour should be dismissed pursuant to the categorical right of detention pursuant to a search warrant. *See*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

### b. Plaintiffs assault claims against Seymour should be dismissed.

"Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006), quoting *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky. App. 2001). Plaintiffs have failed

to plead any facts that Seymour threatened to touch them or took any action that constituted a threat of touching them. In fact, there is no indication that Seymour even encountered Plaintiff Nascayauni. Therefore, Plaintiffs claims of assault against Seymour should be dismissed.

In the alternative, as explained in Section V(b), *supra*, Plaintiffs' assault claims against Seymour should be dismissed pursuant to the categorical right of detention pursuant to a search warrant, which can be argued to necessarily include a threat of unwanted touching. *See*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

    **c.** **Plaintiffs battery claims against all Seymour should be dismissed.**

The tort of battery "requires an actual unwanted touching." *Begley*, 203 S.W.3d at 171. Plaintiffs have failed to plead any facts that Seymour actually touched them. In fact, there is no indication that Seymour even encountered Plaintiff Nascayauni. Therefore, Plaintiffs claims of battery against Seymour should be dismissed.

In the alternative, as explained in Section V(b), *supra*, Plaintiffs' battery claims against Seymour should be dismissed pursuant to the categorical right of detention pursuant to a search warrant, which can be argued to necessarily include an actual unwanted touching. *See*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

    **d.** **Plaintiffs' claims for intentional infliction of emotional distress should be dismissed.**

Intentional infliction of emotional distress falls under the tort of outrage, which is a "gap-filler providing redress for extreme emotional distress in those instances in which the traditional common law actions did not." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993.)

> Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in

> those instances must be had under the appropriate traditional common law action. The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up.

*Id.* Plaintiffs have not alleged that Seymour acted with intent to cause extreme emotional distress to them. The facts alleged do not suggest that Seymour acted with intent to cause extreme emotional distress to the Plaintiffs. This claim should be dismissed for failing to sufficiently allege facts to support it. Alternatively, to the extent a claim under one of the traditional torts moves forward, this claim should be dismissed.

### e. Plaintiffs' claims for negligence against Seymour should be dismissed.

Plaintiffs also generally allege that Seymour was negligent and substantially disregarded a significant risk to their safety. (DN 45, ¶ 115.) "Actionable negligence consists of a duty, a violation thereof, and consequent injury." *Illinois Central R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). Other than conclusory statements, Plaintiffs have failed to allege specific facts that Seymour violated his duty to act as a reasonable police officer. Therefore, Plaintiffs' claims against Seymour for general negligence should be dismissed.

### f. Plaintiffs' claims for trespass to land against Seymour should be dismissed.

Plaintiffs make generalized allegations that Seymour committed the state tort of trespass to land. However, as discussed in Section IV, *supra*, Seymour made entry to Plaintiffs' land pursuant to a search warrant. Thus, without any factual allegations implying that Defendants should have known or did know that the search warrant was invalid, the search warrant authorizing them to make entry on Plaintiffs' land provides Seymour with qualified immunity for liability arising from this tort.

## **CONCLUSION**

For the foregoing reasons, Defendant Seymour respectfully requests this Honorable Court to enter the attached order granting their Motion to Dismiss.

>Respectfully submitted,
>
>MICHAEL J. O'CONNELL
>JEFFERSON COUNTY ATTORNEY
>
>BY: /s/ Annale R. Taylor
>Annale R. Taylor
>Peter F. Ervin
>Assistant Jefferson County Attorneys
>Fiscal Court Building
>531 Court Place, Suite 900
>Louisville, Kentucky 40202
>(502) 574-8083 (ART)
>(502) 574-6621 (PFE)
>annale.taylor@louisvilleky.gov
>peter.ervin@louisvilleky.gov
>*Counsel for Defendants*

## CERTIFICATE

I hereby certify that on January 6, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will automatically send copies to all counsel of record.

>s/ Annale R. Taylor
>Annale R. Taylor