**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CASE ACTION NO. 3:18-CV-265-JRW**

**NASHAYLA JONES, et al.**                                          **PLAINTIFFS**

vs.   **DEFENDANT SEYMOUR, BOEHNLEIN, BROWNING, CASSE, COBB, DALE, GRANHOLM, HOGAN, KING, LEDBETTER, PARKS, PHAN, PRIEL, ROBERTS, WALKER, WEEDMAN, WELLS AND ZUMMACH'S REPLY TO PLAINTIFFS' RESPONSE TO THEIR MOTIONS TO DISMISS**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT,** *et al*                                       **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \*

Come the Defendants, Seymour, Boehnlein, Browning, Casse, Cobb, Dale, Granholm, Hogan, King, Ledbetter, Parks, Phan, Priel, Roberts, Routzahn, Walker, Weedman, Wells, and Zummach, by counsel, and in Reply to Plaintiffs' Response to their Motions to Dismiss, hereby state as follows:

**INTRODUCTION**

These Defendants moved to dismiss Plaintiffs' Second Amended Complaint (hereinafter, "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6). (*See,* DN 59 and 65.) Specifically, these Defendants moved for dismissal of the First, Fourth, and Fourteenth Amendment claims on the grounds for failure to properly plead a cause of action and, as they relate to Plaintiff Nashayla, that they are barred by the statute of limitations; that Plaintiff Nashayla's claims for assault, battery, false imprisonment, trespass to chattel, and conversion are barred by the statute of limitations; remaining claims of false imprisonment, assault, battery, intentional infliction of emotional distress, negligence, and trespass to land for failure to plead a cause of action; Plaintiff

1

Nascayauni's claims for trespass to chattel and conversion against Boehnlein, Browning, Parks, and Zummach for failure to plead a cause of action; and claims for false imprisonment, assault, battery, intentional infliction of emotional distress, negligence, and trespass to land, to the extent not barred by the statute of limitations in relation to claims made by Plaintiff Nashayla, against Seymour be dismissed for failure to plead a cause of action.

Plaintiffs response concede that their First and Fourteenth Amendment claims are directed only to Defendants Louisville Metro and Schardein. (DN 68, p. 3.) Plaintiff Nashayla reminds the parties of her previous concession that the claims with a one-year statute of limitations are barred by the statute of limitations against these Defendants, but fails to mention a concession regarding the claims of trespass to chattel and conversion which are subject to a two year statute of limitations. (*Id.*) Plaintiffs also conceded that the claim of outrage is directed only towards Defendant Schardein (*Id.*); thus, this claim should be dismissed against these Defendants.

Plaintiffs failed to respond to the argument for dismissal of the state law false imprisonment and assault claims on behalf of Browning, Casse, Cobb, Dale, Granholm, Hogan, King, Ledbetter, Parks, Phan, Priel, Routzahn, Walker, Weedman, and Wells. (DN 68, p. 18.)

Plaintiffs also argue that the Defendants are not entitled to qualified immunity for any of their actions. (*Id.* at 2-3.)

For the reasons stated herein and in their respective motions, some of Plaintiffs' claims against these replying Defendants should be dismissed.

## ARGUMENT

**I.     Plaintiffs Fourth Amendment excessive use of force claims fail as a matter of law.**

The Response argues that these Defendants used excessive force in three separate instances: 1) when Defendants detained the Plaintiffs; 2) by deploying two flash-bangs; and 3) in the destruction of their personal property during the execution of the search warrant. (DN 68, p. 2.) However, these Fourth Amendment claims only apply to Plaintiff Nascyauni as the one year statute of limitations bars these claims in respect to Plaintiff Nashayla. (*See*, DN 59, p. 7-8, and DN 65, p. 4-5.)

    a. **Defendants used reasonable force in detaining Plaintiffs.**

Citing to paragraphs 52-53 and 63 of the Complaint, Plaintiff Nashayla argues that up to ten of these replying Defendants detained her at gunpoint. (DN 68, p. 7.) However, a review of those paragraphs finds that only eight of these Defendants – Casse, Dale, Seymour, Routzahn, Walker, Priel, Phan, and Hogan – held her at gunpoint. On this fact alone, and assuming for the sake of argument only that the Fourth Amendment claim for Plaintiff Nashayla is not dismissed on statute of limitation grounds, this claim on the grounds of excessive force in detaining Plaintiff Nashayla against Parks, Ledbetter, Boehnlein, Browning, Cobb, Granholm, King, Roberts, Weedman, Wells, and Zummach should be dismissed.

Plaintiff Nashayla argues that she posed no threat to the officers because she was naked and clearly unarmed, the target of the raid was already under arrest, the remaining occupants of the house were children, there were ten masked[1] defendants pointing assault rifles at her for a prolonged period of time, and she was not *actively* resisting. (DN 68, p. 9)(emphasis added.)

However, Plaintiff Nashayla also concedes that when the officers entered her bedroom, she promptly cloaked herself with a sheet and attempted to step around shards of glass in her attempts to get to a bathroom. (*Id.* at 8.) There are no allegations that officers broke windows

---

[1] The description of the Defendants being "masked" is a new fact nowhere within the Complaint; coincidentally, Plaintiffs' first mention of the Defendants being masked coincides with the first time they cite to *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) which found the fact the defendants were wearing masks to be a relevant factor in the Court's excessive force analysis.

into Plaintiff Nashayla's bedroom; thus, by admitting she was stepping around shards of glass from broken windows attempting to get to the bathroom illustrates that she was no longer within the confines of her bedroom and could have been perceived as to resisting compliance with officer commands. Further, the episode lasted "up to five minutes" meaning Plaintiff Nashayla was only held at gunpoint for less than five minutes. (DN 45, ¶ 68.)

Granholm, Weedman, Wells, Ledbetter, and King are each alleged to have held Plaintiff Nascayauni at gunpoint for up to five minutes while she held on to a dog. (DN 45, ¶¶ 67-68.) Plaintiff Nascyauni claims her detainment at gunpoint was unreasonable due to the presence of five officers holding her at gunpoint, the target of the raid was already subdued and the remaining occupants of the home posed no threat, the length of time of her detainment at gunpoint being up to five minutes, and her limited range of motion due to fear that her dog would be killed. (DN 68, pp. 10-11.)

The Supreme Court recognized that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants [of the home] is minimized if the officers routinely exercise unquestioned command of the situation." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). The existence of a search warrant "provides an objective justification for the detention." *Id.* at 703. Such detention is appropriate because "the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Muehler v. Mena*, 544 U.S. 93, 98 (2005.)

The cases cited by Plaintiffs as support for their position present substantially different factual scenarios than the one at issue her. In *Vanderhoef*, the plaintiff was a teenager suspected of speeding and reckless driving, who immediately complied with officer commands to get down

on the ground upon exiting the vehicle and did not resist or attempt to flee despite the fact the officer was off-duty, out of uniform, and never identified himself as a police officer. *Vanderhoef v. Dixon*, 938 F.3d 271 (6th Cir. 2019.)

In *Binay*, it was alleged that the officers held the plaintiffs at gunpoint and handcuffed for almost an hour, which was long after a search of the apartment had concluded, no narcotics were found, the plaintiffs were not actively or passively resisting, and had no criminal history. *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010).

As the Court in *Ramage v. Louisville/Jefferson County Metro Gov't*, 520 Fed.App'x. 341 (6th Cir. 2013) explained, relying upon *Muehler v. Mena*, 544 U.S. 93 (2005), it is "plainly permissible" under the Fourth Amendment for the plaintiff, asleep in her bed when officers arrived, to be woken, "placed in handcuffs at gunpoint, and guarded – while handcuffed – throughout the duration of the search." *Ramage*, 520 Fed.App'x at 347.

Plaintiffs here were both woken by officer presence and held at gunpoint for up to five minutes before being taken outside; there are no allegations that they were held at gunpoint beyond five minutes. The officers were clearly identifiable as law enforcement. The facts as alleged are kin to those in *Ramage* where the Court determined the officers' actions in detaining the plaintiff at gunpoint were "plainly permissible." Thus, these claims should be dismissed.

### b. Use of two flash bangs was not excessive force in violation of the Fourth Amendment.

Upon Defendants initial breach, Phan and Seymour provided tactical cover to Boehnlein as he attempted to secure the kitchen. (DN 45, ¶ 49.) Parks, part of the entry team following the initial breach, threw a flash bang into the kitchen (*Id.* at ¶ 51) where Boehnlein had already attempted to secure and thus had visual inside. The second flash bang succeeded the first (*Id.*)

5

and was deployed by Cobb when he entered the front of the house with the secondary breach team. (*Id.* at ¶ 57.)

The *Estate of Bing* case Plaintiffs rely upon to argue that a jury could determine the use of a second flashbang constitutes excessive force has important facts not present in this action that the Court considered in its analysis. *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 570 (6th Cir. 2006). The officers in *Bing* knew the plaintiff's home contained highly flammable accelerants and that the flashbang could easily start a fire; thus, the use of the second flashbang in that situation could be determined to be objectively unreasonable. *Id.*

In *Krause*, the Court determined the use of the flash bang reasonable after considering that it was deployed into one room where the suspect was isolated, it was deployed away from the closet so as to prevent any potential fire, and nothing indicated the plaintiff had any health problems that could be triggered by the device. *Krause v. Jones*, 756 F.3d 675, 679 (6th Cir. 2014).

The Court again confirmed the reasonable use of two flash bangs in *Moore v. City of Memphis*, 853 F.3d 866, 871 (6th Cir. 2017). In coming to that decision, the Court considered that the officers had no reason to believe that the flashbangs would pose a danger to the plaintiff, the plaintiff had no health conditions that made him vulnerable to flash bangs, and the house contained no accelerants or other substances that could easily ignite. *Id.* The Court in *Ramage* explicitly stated that it has never held "the use of a flash-bang to be excessive force[.]" *Ramage*, 520 Fed.App'x. at 346.

In this matter, there are no allegations that the officers' use of the flash bangs harmed the Plaintiffs in any way; neither them nor any other occupants of the house were in the same room

or even an adjacent room at the time they were deployed; and, nothing indicates the presence of any accelerants in the home or that the officers believed there were accelerants present.

This was a search warrant for narcotics, drug paraphernalia, and instrumentalities of crime. (DN 45, ¶ 27.) The U. S. Supreme Court explicitly recognized that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). When considering each of these factors, the use of the two flashbangs was objectively reasonable.

### c. Liability of individual officers as part of a team.

Plaintiffs argue that based on *Fazica v. Jordan*, 926 F.3d 283, 291 (6th Cir. 2019), whether individual Defendants part of a specific team can be held liable for any constitutional violations is a question for the jury, specifically because an individual Defendant took some action at some point during the incident or for merely being a member of a team that took some action. (DN 68, p. 7 and 14.)

However, *Fazica* dealt specifically with a situation in which the plaintiff was unable to identify which individual officer took a specific action that resulted in a constitutional violation. The Court reasoned that given the evidence identifying a group of officers as being a part of team and staying together for the relevant parts of an incident and the evidence that one officer of the team took some act constituting a constitutional violation, whether the remaining officers on the team were liable for some constitutional violation was a question for the jury. *Fazica*, 926 F.3d at 290-91. The *Fazica* Court explicitly reiterated that a plaintiff must still prove each defendant's individual liability by their own actions rather than the actions of a team member. *Id.* at 293.

The Plaintiffs in this case have specifically identified in the Complaint which Defendants took what actions. Thus, the analysis of *Fazica* does not apply and the Motions to Dismiss should be granted based as to the individual Defendant's basis of liability as argued by the Defendants.

### d. The use of force in gaining entry to the home was objectively reasonable.

Defendants only argued for dismissal of excessive force claim as it related to the breaking of windows and doors to gain entry to the home. (DN 59, p. 11-13, DN 65, p. 8.) In response, Plaintiffs argue that the property damage was "gratuitous and excessive, as none them [sic] were necessary or reasonably calculated to carry out the objective of a search for drugs or contraband." (DN 68, p. 15.) Plaintiffs also argued that the damage to Nascyauni's mirror, a platinum table, birch dresser, and gas oven was excessive under the Fourth Amendment. *Id.* However, Defendants did not dispute that those actions were pled so as to sufficiently state a claim for a Fourth Amendment violation against Defendants.

Plaintiffs failed to present an argument as to how the destruction of doors and windows to make entry or obtain a visual into the home was objectively unreasonable. Therefore, these Defendants motions as to the claims of a Fourth Amendment violation of excessive force in gaining entry to the home should be dismissed for the reasons stated in DN 59, p. 11-13, DN 65, p. 8.

### e. Shooting of Cashus was objectively reasonable.

Plaintiffs have provided no authority to support their position that the shooting and killing of Cashus was objectively unreasonable. Rather, they attempt to characterize the dogs' actions as though they were running from the officers rather than just running loose around the home as indicated by the Complaint. (DN 45, ¶¶ 62-65.)

A dog was considered not to be an imminent threat to officers when it was physically separated from the officers by a wooden barricade, never lunged or attacked the officers, and were instead cowering in the corner when officers made entry. *See*, *Bullman v. City of Detroit*, 787 Fed.App'x. 290, 299 (6th Cir. 2019).

In *Brown v. Battle Creek Police Dep't*, 844 F.3d 556 (6th Cir. 2016), the dogs were loose in the home the officers needed to clear, the target was known to the officers for his criminal history and gang affiliations, and the officers testified the dogs were behaving aggressively. *Brown*, 844 F.3d at 561-63.

As described in Seymour's Motion to Dismiss (DN 65, p. 10), Plaintiff Nashayla failed to get her dogs under control when asked by Ledbetter, officers tried to block them from getting up the stairs and keep them in the basement, the dogs ran through a number of officers in the kitchen area on the way to Plaintiff Nascyauni upstairs, and finally Cashus came running back down to the kitchen. These facts illustrate that there were numerous dogs that were unable to be controlled by officers or by their owners and they continued running around the home while the officers were attempting to secure it during the execution of a narcotics search warrant, which carries inherent risks by its very nature. *See, Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). For these reasons, Seymour's actions were objectively reasonable and this Fourth Amendment claim against him should be dismissed.

## II.     Plaintiffs' state law claims.

Plaintiff Nashayla argues that Phan is liable for battery when he shoved her chest with the muzzle of his assault rifle. (DN 68, p. 17.) However, as previously argued, Plaintiff Nashayla's battery claim against Phan is barred by a one-year statute of limitations. (*See*, DN 59, p. 7-8.)

9

Contrary to Plaintiffs' belief, these Defendants moved to dismiss the false imprisonment and assault claims against each of them, not only the claims against Boehnlein, Roberts, Zummach, and Seymour. (DN 59, p. 17; DN 68, p. 65, p. 12-13.) In response to the Defendants' Motion, Plaintiffs simply state that "the participation of Boehnlein, Roberts, Zummach, and Seymour in the unreasonable use of force against the Plaintiffs was in excess of the amount of force necessary to detain them." (DN 68, p. 18.)

However, as previously stated (*See*, DN 59, p. 17; DN 68, p. 65, p. 12-13), Boehnlein, Roberts, Zummach, and Seymour never took any actions that would satisfy the necessary elements of false imprisonment or assault claims. Additionally, assuming Plaintiffs' argument that Defendants use of force was in excess of the amount necessary to detain them is applied to the remaining Defendants' actions, those Defendants are entitled to qualified immunity. "[T]he determination of the amount of force required to effect the investigatory stop or arrest is likewise a discretionary act within the scope of a peace officer's authority." *Smith v. Norton Hospital*, 488 S.W.3d 23, 31 (Ky. 2016), quoting *Nichols v. Bourbon Cnty. Sheriff's Dep't*, 26 F.Supp.3d 634, 642 (E.D. Ky. 2014).

Plaintiffs make the same "force used was in excess of the amount of force necessary" argument in regards to Seymour, Browning, Boehnlein, Roberts, and Zummach's defense to the trespass to chattel and conversion claims. (DN 68, p. 18.) However, the Complaint contains no facts that indicate Browning, Boehnlein, Roberts, or Zummach took any actions that constitute the necessary elements of trespass to chattel and conversion claims. (DN 59, p. 18.) Seymour is entitled to qualified immunity as his actions in relation to Cashus were objectively reasonable and discretionary in determining the appropriate amount of force required. *See*, *Smith, supra.*

Regarding the claims for negligence, Plaintiffs have failed to identify a specific duty the Defendants owed to them to satisfy a claim for negligence. (*See*, DN 59, p. 19.)

## CONCLUSION

For the foregoing reasons, Defendants Boehnlein, browning, Casse, Cobb, Dale, Granholm, Hogan, king, Ledbetter, Parks, Phan, Priel, Roberts, Routzahn, Seymour, walker, Weedman, Wells, and Zummach respectfully request this Honorable Court grant their Motion to Dismiss.

        Respectfully submitted,

        MICHAEL J. O'CONNELL
        JEFFERSON COUNTY ATTORNEY

BY: /s/ Annale R. Taylor
        Annale R. Taylor
        Peter F. Ervin
        Assistant Jefferson County Attorneys
        531 Court Place, Suite 900
        Louisville, Kentucky 40202
        (502) 574-8083 (ART)
        *Counsel for Defendants*

## CERTIFICATE

I hereby certify that on February 7, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will automatically send copies to all counsel of record.

        s/ Annale R. Taylor
        Annale R. Taylor