UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

NASHAYLA JONES, et al.                                                    PLAINTIFFS


v.                                                  CIVIL ACTION NO. 3:18-CV-00265-JRW-RSE


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                                  DEFENDANTS

## ORDER

1. The Court **GRANTS IN PART** and **DENIES IN PART** Louisville Metro and Schardein's motion to dismiss (DN 50), the eighteen individual officers' motion to dismiss (DN 59), and Seymour's motion to dismiss (DN 65).

2. The Court **DISMISSES** with prejudice the following claims against individual Defendants:

   a. The Plaintiffs' First Amendment retaliation claim;

   b. Nashayla's Fourth Amendment excessive force claim against all individual Defendants other than Schardein;[1]

   c. The Plaintiffs' Fourteenth Amendment due process claim;

   d. The Plaintiffs' trespass to land claim; and

   e. Nashayla's claims of assault, battery, false imprisonment, conversion, and negligence.[2]

---

[1] Nashayla's Fourth Amendment excessive force claim against Schardein may proceed.  All Nascyauni's Fourth Amendment excessive force claims may proceed.

[2] All Nascyauni's claims of assault, false imprisonment, conversion, and negligence may proceed. Nascyauni did not bring a battery claim.

1

3. The Court **DISMISSES** with prejudice the following *Monell* claims against Louisville Metro:

    a.   The Plaintiffs' First Amendment retaliation claim;

    b.   The Plaintiffs' failure to train veterans claim; and

    c.   The Plaintiffs' risk assessment matrix claim.[3]

## OPINION

In 2017 the Louisville Metro Police Department executed a search warrant on the residence of Nashayla Jones and her daughter, Nascyauni Jones.  Nashayla and Nascyauni brought First, Fourth, and Fourteenth Amendment claims against the officers who conducted the search and Louisville Metro under 42 U.S.C. § 1983.  They also brought state law claims against the individual officers. The Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6).

## I.

In April 2017, Thomas Schardein, a sergeant with the Louisville Metro Police Department, obtained a search warrant for Plaintiffs' residence and the surrounding property.[4]  (DN 45, ¶ 26). The target of the search warrant was Nashayla's husband.  (*Id.* ¶ 29).  They used a "Risk Assessment Matrix" to determine that the situation was "high-risk," necessitating a "no-knock" warrant and a SWAT team.  (*Id.* ¶¶ 28-30).

The next morning around 9:00 a.m., twenty-one SWAT team members executed the search warrant on the Joneses' home.[5]  (*Id.*, ¶¶ 40-41).

---

[3] Plaintiffs' body camera *Monell* claim may proceed.

[4] "All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).

[5] These LMPD officers comprise the individually named Defendants and include:  John Seymour; Luke Phan; Jeremy Boehnlein; Scott Walker; Joel Casse; Vadim Dale; Brent Routzahn; Christopher Priel; Brandon Hogan; P. Cobb; David Ledbetter; Shannon Parks; Aaron Browning; Daniel Zummach; Chris

The SWAT team broke through several exterior doors and windows by force.  (*Id*. ¶¶ 44, 56, 60).  They detonated several stun grenades.  (*Id*. ¶¶ 51-52, 57).  They made their way to the lower level of the house, where Nashayla's husband was taken into custody.  (*Id*. ¶¶ 44-46).  They temporarily detained a then-unclothed Nashayla.  (*Id*. ¶¶ 44-60).

Nashayla informed the officers that her son was on the upper level of the house and had Asperger's Syndrome.  (*Id*. ¶¶ 55, 59).  But Browning fired his weapon at Nashayla's son as he was walking down the stairs.  (*Id*. ¶ 59).  Several officers repeatedly shot and injured Nascyauni's licensed therapy dog.  One of them, John Seymour, later shot and killed the dog.  (*Id*. ¶¶ 62-65).  At different points during the raid, Plaintiffs and their family members were held at gunpoint.  (*Id*. ¶¶ 53, 67-68).

The Plaintiffs allege that the officers broke windows, destroyed furniture, and ripped a gas oven from the wall causing a gas leak, even after the house was secured and the suspect was in custody.  (*Id*. ¶¶ 72-74).  They say that a variety of their property was intentionally and unreasonably destroyed during the raid, including a service animal, mirror, table, interior windows, and a dresser.  (*Id*. ¶¶ 65, 77-80).  Finally, Plaintiffs allege that during the search no officer wore or activated a body camera, and that an officer confiscated and destroyed the hard-drive of the surveillance cameras attached to Plaintiffs' home.  (*Id*. ¶¶ 76, 85-86).

The officers discovered no illegal drugs or firearms within the home and the Plaintiffs weren't charged with any crime.  (*Id*. at ¶¶ 81-82).  Nashayla and Nascyauni filed a complaint with the LMPD.  (*Id*. ¶ 83). They say that law enforcement officers thereafter started calling their landlord to "dig up dirt" on the family. (*Id*. ¶ 84).

---

Wells; Mark Granholm; M. King; Anthony Roberts; and Daniel Weedman.  (DN 45, ¶¶ 44, 47, 56, 60). Schardein was also present.  (*Id*. at ¶ 70).

Plaintiffs initiated this action in 2018. Their Second Amended Complaint names Louisville Metro and 20 individual officers as defendants. They allege violations of the First, Fourth, and Fourteenth Amendments and violations of state law. (*Id*. ¶¶ 89-118). Louisville Metro and Schardein moved to dismiss. (DN 50). Seymour and the remaining eighteen named officers[6] also moved to dismiss. (DN 59; DN 65).[7]

## II.

Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This Court will consider Plaintiffs' Section 1983 and state law claims against the individual officers before turning to their municipal-liability claims against Louisville Metro.

## III.

Our analysis begins with the applicable statutes of limitations in this case. Section 1983 claims in Kentucky are subject to a one-year statute of limitations. *See Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (citing KRS § 413.140(1)(a)). Actions for assault, battery, false imprisonment, and personal injury are subject to the same one-year statute of

---

[6] Seymour filed a separate motion to dismiss. (DN 65).
[7] These two motions offer the same grounds for dismissal and will be considered as one.

limitations.  *See* KRS § 413.140(1)(a); *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 642 (W.D. Ky. 2019) (citations omitted); *Dunn v. Felty*, 226 S.W.3d 68, 70 (Ky. 2007).  Actions for conversion and negligent injury to personal property are subject to a two-year statute of limitations.  *See* KRS § 413.125;  *Newberry v. Service Experts Heating & Air Conditioning, LLC*, 806 Fed.App'x 348, 362-63 (6th Cir. 2020). Trespass claims are subject to a five-year statute of limitations. KRS § 413.120(4);  *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872-73 (Ky. App. 2012) (trespass to chattel is an intentional tort subject to the five-year statute of limitations under KRS § 413.120(4)).

The officers searched the Joneses' home on April 27, 2017. The Complaint was filed on April 26, 2018 and named Schardein and Louisville Metro.  It wasn't until the Second Amended Complaint in September 2019 that the Plaintiffs specifically named the other individual officers. The claims against the newly-named officers do not relate back to the original complaint. *See Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012).

Plaintiffs concede that Nashayla's claims against the individual officers — other than Schardein — are barred insofar as they are subject to the one-year statute of limitations.  (DN 38 at #529; DN 68 at #990).  They do not argue that there should be a different result as to the two-year limitation claims.  In sum, Nashayla's individual capacity 1983 claims and any state law claims for assault, battery, false imprisonment, conversion, and negligent injury to person or property against individual officers other than Schardein are barred by statutes of limitation and are dismissed.  The defendants do not contend that Nascyauni's claims suffer the same fate because

she was a minor at the time of the police raid. The statutes of limitations were tolled for her claims. *See* KRS § 413.170(1). Thus, Nascyauni's claims are not time-barred.

### A.   <u>First Amendment Claim Against Schardein</u>[8]

Plaintiffs say that Schardein retaliated against them for exercising their First Amendment right to petition.[9] (DN 68 at #990). A First Amendment retaliation claim requires the plaintiff to plead the following three elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)). The Sixth Circuit has characterized this test as "context-driven" because "whether activity is protected or an action is adverse will depend on context." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (cleaned up) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc) (per curiam)).

Nashayla, on her and Nascyauni's behalf, filed a complaint with LMPD after the police raid, which triggered an investigation. (DN 45, ¶ 83). They also say that, after the petition was filed, law enforcement officers contacted Plaintiffs' landlord to "dig up dirt" or "get dirt" on them. (*Id*. ¶¶ 83-84). They say that this was adverse conduct because it caused them to "live in fear of the Defendants." (*Id*. ¶ 85). But Plaintiffs never allege that Schardein was one of the officers that called their landlord. Even if they generally pleaded a sufficient retaliation claim, they have

---

[8] Nashayla and Nascyauni clarify that their First Amendment claims are retaliation claims, not right-to-petition claims. (DN 56 at #787-88). Insofar as the Second Amended Complaint implies right-to-petition claims, they are dismissed.

[9] To the extent the Second Amended Complaint implies First Amendment claims against the other officers, they are also dismissed.

pleaded no specific facts to suggest that Schardein was ever involved in this alleged retaliatory scheme at all.  Plaintiffs say in a conclusory fashion that Schardein and others "have sought to intimidate and silence the Plaintiffs from pursuing the administrative procedures afforded to them by the laws of the United States and the Commonwealth of Kentucky . . ."  (DN 45, ¶ 87).  This vague legal conclusion is insufficient, however, to state a plausible claim that Schardein was personally involved in a scheme to intimidate Plaintiffs into dropping their complaint.  The First Amendment retaliation claim against Schardein is dismissed.

## B. <u>Fourth Amendment Claims Against Individual Officers</u>

We turn to Nascyauni's Fourth Amendment claim against the twenty named officers and Nashayla's Fourth Amendment claim against Schardein.[10]

The officers argue that Plaintiffs have failed to plead claims for excessive force under the Fourth Amendment.[11]  (DN 59 at #878; DN 65 at #969).  *See Moore v. City of Memphis*, 853 F.3d 866, 870 (6th Cir. 2017) ("Officers violate the Fourth Amendment when they use excessive force in the execution of a search warrant.") (cleaned up).  "An officer's use of force is excessive if, under the totality of the circumstances, the force was objectively unreasonable." *Id*.

The objective-reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

---

[10] As explained, Nashayla's Section 1983 claims against the nineteen officers other than Schardein are time-barred. Though not entirely clear from the briefing, it appears that Nashayla and Nascyauni also allege an excessive force claim against Schardein. (DN 56 at #787).

[11] LMPD entered the Joneses' home pursuant to a search warrant. *See Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) ("In the context of searches and seizures, police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." (cleaned up) (quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Nashayla and Nascyauni do not plead that the search warrant lacked probable cause nor do they specifically respond to this line of argument.  Insofar as Plaintiffs are alleging claims for unlawful search under the Fourth Amendment for the home entry, they are dismissed.

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Plaintiffs allege that the officers destroyed property, used flash-bangs, discharged their weapons, and held the occupants of the house at gunpoint. They say that the officers continued take these actions after Nashayla's husband — the subject of the warrant — was in custody. (DN 45, ¶¶ 72-74). They also say the cops needlessly killed their dog. (*Id*. ¶¶ 62-65).

These allegations are sufficient to survive a motion to dismiss. While the officers maintain that their actions were reasonable, it's plausible that they weren't. At this point, we must draw all inferences in favor of the plaintiffs and deny the officers' motions to dismiss.

Next, the officers point out that each "must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citation omitted). Here, they are quite right. But "specific constitutional violations can be committed not only by an officer personally applying excessive force, but also by an officer witnessing excessive force and neglecting his duty to intervene." *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019).

Plaintiffs' complaint can be construed to allege exactly that. It explains how the officers "worked as a team" during the search and seizure. (DN 68 at #1001) (quoting *Fazica,* 926 F.3d at 291). Drawing inferences in favor of the Plaintiffs, Nashayla and Nascyauni sufficiently pleaded that the twenty named officers used excessive force. Nashayla's excessive force claim against Schardein and Nascyauni's excessive force claim against all the named officers may proceed.

Last, some of the officers invoke qualified immunity for the search and seizure. (DN 50, #740-742). Qualified immunity applies to government officials when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As with an excessive force claim,

qualified immunity looks to "the objective reasonableness of an official's conduct." *Id.* It is a fact-intensive inquiry. Thus, "[i]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Although there are exceptions to that general rule, this isn't one of them.

At this stage, the officers are not entitled to qualified immunity on Nashayla and Nascyauni's excessive force claims.

### C.     Fourteenth Amendment Claims Against Schardein

Plaintiffs allege that Schardein violated their procedural due process rights.[12]  To state a Section 1983 procedural due process claim, plaintiffs must plead an interest recognized by the Fourteenth Amendment, that they were deprived of that interest, and that they weren't given "adequate procedural rights" before the deprivation occurred. *Wedgewood Ltd. Partnership I v. Township of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010) (citation omitted). A plaintiff must also plead that post-deprivation remedies were inadequate. *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999). "State tort remedies generally satisfy the post deprivation process requirement of the Due Process Clauses." *Id.* at 349 (citing *Hudson v. Palmer*, 468 U.S. 517, 534-36 (1984)).

The Second Amended Complaint asserts claims for conversion and trespass to chattel. (DN 45, ¶ 117). Plaintiffs did not allege that these state law remedies were inadequate, nor would such an argument be persuasive based on the pending state law tort claims before this Court.[13]  Because

---

[12] Insofar as the Second Amended Complaint implies Fourteenth Amendment claims against the remaining individual officers, they are dismissed. Also, the Plaintiffs only allege procedural due process claims, not substantive due process claims.  (DN 56 at #788).  Insofar as the Second Amended Complaint implies substantive due process claims, they are dismissed.

[13] The Plaintiffs correctly state that sovereign immunity precludes post-deprivation tort remedies against Louisville Metro. *See Juillerat v. United States*, 3:16-CV-00276-TBR, 2016 WL 6156179, at *3 (W.D. Ky. Oct. 21, 2016) ("all of Plaintiff's state-law claims against Louisville Metro. . .  are barred by the doctrine of sovereign immunity and are therefore dismissed.").  But the Plaintiffs can, and have, brought tort claims against individual officers.

Plaintiffs have available post-deprivation remedies, their Fourteenth Amendment claims are dismissed. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) ("Because Plaintiff failed to plead that post-deprivation remedies were inadequate, his claim on this issue was properly dismissed.").

**D.      State Law Claims**

Plaintiffs have pleaded state law claims against various individual Defendants, including: (1) outrage, (2) battery, (3) trespass to land, (4) false imprisonment, (5) assault, (6) conversion, (7) trespass to chattel, (8) negligence, and (9) recklessness. (DN 45, ¶ 2).[14]

*1.    Outrage*

Plaintiffs bring the claim of outrage against Schardein only. (DN 56 at #804; DN 68 at #1005).[15]   Under Kentucky law, the tort of outrage requires a showing that the "defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable so as to offend generally accepted standards of morality and decency, that a causal connection exists between the conduct complained of and the distress suffered, and that the resulting emotional stress was severe." *Brewer v. Hillard*, 15 S.W.3d 1, 6 (Ky. App. 1999) (citing *Humana of Ky. Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)).  This tort only encompasses truly "outrageous and intolerable conduct," not merely "petty insults, unkind words and minor indignities." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996).  "[T]here is a clearly developed paradigm for outrage:

---

[14] The Second Amended Complaint separately alleges outrage and intentional infliction of emotion distress, but these are two names for the same claim in Kentucky. *See Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001).

[15] To the extent the Second Amended Complaint alleges the claim of outrage against the other Defendants, those claims are dismissed.

when actions or contact is intended only to cause extreme emotional distress in the victim." *Brewer*, 15 S.W.3d at 8.

The Second Amended Complaint states that in response to Nashayla's questions about her daughter, Schardein "stated that she was not in the house, in such a manner as to deliberately induce [Nashayla] to believe that her daughter had been killed. [Nashayla] had heard rounds fired upstairs, and had seen and heard rounds fired downstairs, and she believed that her daughter had been killed." (DN 45, ¶ 70). Accepting these allegations as true, Plaintiffs have properly pleaded a claim for outrage. Deliberately implying to a parent that her child has just been killed after the parent heard gunshots in her house is not a mere petty insult or unkind word; if true, the only purpose for creating such a belief would be to cause severe emotional distress in that parent. Nashayla's outrage claim against Schardein may proceed.

### 2. *Battery*

The Plaintiffs say that Defendant Phan committed battery against Nashayla "when he shoved her chest with the muzzle of his assault rifle."[16] (DN 68 at #1004). But as we already explained, Nashayla's battery claim is time-barred. KRS § 413.140(1)(a). This claim is dismissed.

### 3. *Trespass to Land*

The Plaintiffs generally allege that the "Defendants intentionally, and without any right, privilege, or legal justification entered the Plaintiffs' domicile." (DN 45, ¶ 117). But they also acknowledge that the Defendants had a warrant to enter their property. (*Id*. ¶ 40). They do not plausibly allege that warrant was invalid or was "lacking in indicia of probable cause." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018). They don't allege any facts supporting a claim for

---

[16] To the extent the Second Amended Complaint alleges the claim of battery against the other Defendants, those claims are dismissed.

11

trespass to land and do not argue this point in their responses to the Defendants' motions to dismiss. The Plaintiffs' trespass to land claim is dismissed.

### 4.    *Remaining Tort Claims*

The Plaintiffs bring the remaining tort claims — false imprisonment, assault, trespass to chattel, conversion, negligence, and recklessness — against all officers other than Schardein. (DN 56 at #801).  The remaining officers summarily state that these claims should be dismissed, but they provide little to no analysis.  *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones."  (cleaned up) (quoting *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)).

Rather, the officers' motions to dismiss these torts generally rely on an expansive reading of *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers*, the Supreme Court concluded that "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  *Id*. at 705.  Officer Defendants contend that this ruling also grants to them a "categorial right of detention pursuant to a search warrant, which can be argued to necessarily include a threat of unwanted touching."  (DN 59 at #886). The officers' broad reading of *Summers*, however, would swallow up all tort claims premised on the execution of a valid search warrant, no matter how unreasonable the conduct of the officers was in its execution.  This argument is rejected.  The Second Amended Complaint states a claim for false imprisonment,

assault, trespass to chattel, conversion, negligence, and recklessness against the officers other than Schardein.[17]

### 5.    *Qualified Immunity*

Last, the individual officers generally contend that they are shielded by Kentucky's doctrine of qualified immunity on the Plaintiffs' tort claims.  (DN 50 at #740-41; DN 59 at #885-86; DN 65 at#974-75).   Under Kentucky law, "public officers and employees are entitled to qualified official immunity for negligent conduct when the negligent act or omissions were (1) discretionary acts or functions, that (2) were made in good faith (i.e. were not made in bad faith), and (3) were within the scope of the employee's authority." *Rowan County. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (cleaned up) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).[18]  For any claims premised on bad faith, qualified immunity is no shield.  For the other claims, we reiterate that a qualified immunity analysis is fact-specific by design and is often more properly considered after some factual development.  *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."). The officers are not entitled to qualified immunity at this stage.

### E.    <u>Municipal Liability Against Louisville Metro</u>

Nashayla and Nascyauni also allege First and Fourth Amendment claims against Louisville Metro for unconstitutional policies or customs.  Louisville Metro moved to dismiss the following

---

[17]   Determining each action of each individual officer is nearly impossible at this stage of the litigation. Further, as we explained in our analysis of the Plaintiff's excessive force claims, Nashayla and Nascyauni have alleged facts to show that all the officers at the scene worked together. We believe that this is sufficient at this stage to state claims of false imprisonment, assault, trespass to chattel, conversion, negligence, and recklessness against the all of the officers other than Schardein, who Plaintiffs have specifically conceded did not commit these torts.

[18] Even though Officer Defendants cite to federal qualified immunity cases in the state claims section of their motions, Kentucky qualified immunity principles apply.  *See Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602, at *2 (W.D. Ky. Jan. 17, 2013) (citations omitted).

*Monell* claims against them: (1) Fourth Amendment violation for the custom of not wearing or activating body cameras; (2) retaliation against individuals who file complaints with the LMPD in violation of the First Amendment; (3) Fourth Amendment violation for failing to properly train veterans; and (4) Fourth Amendment violation for the policy of using the "Risk Assessment Matrix" without accounting for bystander safety.  (DN 45, ¶¶ 85-86, 92, 95-96, 99-103).

A municipal government may be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his or her civil rights were violated "as a direct result of a municipality's policy or custom." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *Monell v. Department of Social Services City of N.Y.*, 436 U.S. 658, 694 (1978)).

A plaintiff generally has four ways to demonstrate a municipal entity's unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Even after showing an unlawful policy or custom, a "plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the 'moving force' behind the violation." *Id.* (cleaned up).

The Court will dismiss three of Plaintiffs' four *Monell* claims.

### 1.    *Custom of Not Activating or Wearing Body Cameras*

Plaintiffs state that none of the twenty officer defendants who participated in the raid wore or activated a body camera.  (Id. ¶ 85-86).  They do not claim that this alone is a constitutional

14

violation, nor could they: "There is no constitutional right to be free from an arrest that is not recorded by a camera." *Graham v. Rowe*, No. 19-6757, 2019 WL 3059801, at *4 (D.N.J. July 10, 2019); *see also Baldwin v. Colley*, No. 15-cv-2762, 2015 WL 5836923, at *4 (N.D. Cal. Oct. 7, 2015) ("Plaintiffs have not cited any authority that squarely supports their position . . . . that the City's non-use of body cameras provides a basis for *Monell* liability.").[19]  Instead, the Plaintiffs allege that LMPD has a custom of not activating or wearing body cameras in order to "motivate[e], enable[e], and conceal[ ]… the use of excessive force." (DN 45, ¶ 92).

To succeed, Plaintiffs must first plausibly allege that the failure to record the raid on camera is a "policy or custom."  A single incident generally is not enough to show a custom.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  But was the raid on Plaintiffs' home a single incident or 20 incidents?  On the one hand, it happened at one place at one time.  On the other hand, it involved 20 officers, so there were 20 individual decisions to not use a body camera. Once this case reaches the summary judgment phrase, this may not be enough to show a custom. But at this point, it's plausible.

Next, the plaintiffs must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."  *Board of County Commissioners of Bryan*

---

[19] *See also Wright v. Covarrubias*, No. 2:19-cv-4227, 2020 WL 2133002, at *8 ("The fact that [another police department] implemented body camera technology does not, by default, mean that the failure to do so must be a basis for *Monell* liability.");  *cf. McDonough v. Toles*, No. 19-cv-2238, 2020 WL 4481961, at *8 (D. Minn. Aug. 4, 2020) (Various allegations against the city — including that an officer "was not required to wear a body camera while off duty . . . [—] together [ ] lend plausibility to McDonough's allegation that the City has demonstrated deliberate indifference to police officers' use of excessive force. The Court therefore denies the City's motion to dismiss this aspect of McDonough's *Monell* claims.").

*County. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted) (cleaned up).  They "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Id.*

A plaintiff must show not only "but-for" causation between a custom and violation, but "proximate" causation.  *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (citation omitted). Here, it is plausible to infer that  un-filmed officers may act differently than those who are under surveillance.  True, there will be times when officers with cameras use excessive force, just as there will be times when officers without body cameras do not use excessive force.  But it's plausible to infer that a city-wide decrease in body camera usage will result in a city-wide increase, to some degree, in incidents of excessive force.  This claim is bolstered by the pleaded fact, which this Court must accept as true, that officers confiscated and destroyed Plaintiffs' surveillance footage of the raid in question.  (*Id.* at ¶ 76).

Again, at the summary judgment phrase, the plaintiffs may lose on this *Monell* claim — on custom, on causation, or on both.  But at the motion to dismiss stage, Plaintiffs have plausibly pleaded that Louisville Metro has a custom of not having officers wear or activate body cameras and that this custom caused their injuries.[20]  This claim may proceed.

### 2.    *First Amendment Retaliation*[21]

Nashayla and Nascyauni say that that Louisville Metro has a custom, practice, or policy of intimidating claimants in retaliation for filing complaints.  (DN 45, ¶¶ 83-84, 94).

---

[20] Defendants' reply relies on a discussion of *Thomas v. City of Chattanooga*.  (DN 70 at #1019-20).  That case, however, deals with a motion for summary judgment, not a motion to dismiss.  When the district court and the Sixth Circuit in *Thomas* considered the alleged municipal policy or custom, they did so under Fed. R. Civ. P. 56 and with the added benefit of affidavits from expert witnesses.  398 F.3d at 431-33.

[21] The Plaintiffs also bring a claim "of retaliation under the First Amendment" against Louisville Metro for "the procedural due process constitutional violations. . . for [ ] intentionally delaying and interfering in the Plaintiffs' Professional Standards Unit. . ."  (DN 56 at #786).  It's unclear to us whether they intend to bring this claim under the First Amendment or Fourteenth Amendment.  To the extent the Plaintiffs are alleging

Even if Plaintiffs have sufficiently alleged an underlying retaliation claim, they have not alleged plausible facts to show that that the retaliation was anything more than isolated incidents by individual officers. *See Tuttle*, 471 U.S. at, 823-24. They only very generally state that "law enforcement officers or agents had been contacting" their landlord to "dig up dirt." (DN 45, ¶ 84). We do not know how many officers were involved or how often they called their landlord. These non-specific allegations are insufficient to show any policy or custom of retaliation. And municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

Plaintiffs attempt to bolster their allegation that Louisville Metro has a custom of retaliating against individuals who file complaints against them with the alleged fact that the investigation triggered by their complaint "remained opened and unresolved" when Plaintiffs filed their Second Amended Complaint. (DN 45, ¶ 83). But even drawing all inferences in favor of the Plaintiffs, the much more likely explanation for this fact is that Louisville Metro moves dismally slow when investigating itself, as do most government bureaucracies. All said, Plaintiffs' First Amendment *Monell* claim does not cross the line from possible to plausible.

This claim is dismissed.

### 3.    *Failure to Train Veterans*

Plaintiffs allege that Louisville Metro's law enforcement training programs for veterans are inadequate.[22] They say that Louisville Metro's current training programs fail to "adapt the

_____

that Louisville Metro has delayed investigation of their LMPD complaint in retaliation for exercising their First Amendment right to petition, this claim is dismissed for the reasons stated herein. To the extent they are alleging a separate *Monell* claim under the Fourteenth Amendment, this claim is dismissed because the Plaintiffs have not alleged that post-deprivation remedies are inadequate. *See Fox*, 176 F.3d at 348; *see also Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").

[22] Defendants also contend that Plaintiffs have failed to state a general claim that Louisville Metro has failed to train its officers. The Second Amended Complaint states: "Louisville Metro's current, deliberately

unique experience, special capabilities and attributes of Armed Services veterans" by not including programing relating to "differentiation between urban warfare environments and policing environments, de-escalation techniques, stress reduction, and the accommodation and treatment of post-traumatic stress disorder." (DN 45, ¶ 100). Plaintiffs further plead that this inadequacy was the result of Louisville Metro's deliberate indifference and the moving force behind their constitutional violation. (*Id*. at ¶¶ 101-03).

"Inadequate training can serve as the basis for municipal liability under § 1983 where it amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Roell v. Hamilton County, Ohio/Hamilton County Board of County Commissioners*, 870 F.3d 471, 487 (6th Cir. 2017) (cleaned up). A failure to train claim requires a showing of three elements: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of . . . deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Id*. (cleaned up).

Drawing all inferences in their favor, the Plaintiffs' failure to train claim falls short of being plausible. Nashayla and Nascyauni identify three of the twenty officers as veterans and point to two lawsuits against two of them alleging violations of excessive force. (DN 45, ¶¶104-106, 108-109). Even assuming that these three officers are veterans, that they have not received specialized training, and that two of them have used excessive force in the past, the Plaintiffs have not plausibly alleged that any inadequacies in their training caused their injuries. Twenty officers executed the search warrant. The Plaintiffs say that each of these officers — not just the veterans — engaged in excessive force and committed other various state law torts during their search. The

---

chosen, training program is inadequate. . . to the tasks that its police officers must perform." (DN 45, ¶ 102). The Court agrees that this is a legal conclusion. Insofar as the Second Amended Complaint pleads more general failure to train claims, they are also dismissed.

fact that three of them happen to be veterans does not support an inference that Louisville Metro was deliberately indifferent to the training of these three veteran officers, or that this inadequate training caused their injuries.

This claim is dismissed.

### 4. *Policy of Using the "Risk Assessment Matrix" Without Accounting for Bystander Safety*

The utilization of a no-knock warrant and the SWAT team was based on a risk assessment made pursuant to the Risk Assessment Matrix. (DN 45, ¶¶ 28, 30). Plaintiffs describe this matrix as one that "balances the facts and circumstances described in search warrant affidavits, with the criminal history of a suspect, and the size and location of the building to be searched, by using a 'checklist' and scoring system." (*Id*. ¶ 95). They pleaded that the current iteration of the Risk Assessment Matrix does not have "an appropriate system for identifying and weighing factors that represent risks to the lives and safety of civilians who are not suspects of the investigation who are known to be occupants of the building to be searched." (*Id.*).

Nascyauni and Nashayla have failed to plausibly allege that any alleged shortcoming in the scoring system caused their injuries. The Risk Assessment Matrix was used to score the search and seizure as "high risk" and therefore obtain the no-knock warrant and use of a SWAT team. But even if the Risk Assessment Matrix did not account for the presence of bystanders, Nashayla and Nascyauni don't allege that their presence in the home or their personal safety was never considered in issuing or executing the no-knock warrant or use of SWAT. They don't plausibly or specifically allege that the warrant lacked probable cause. In fact, the officers did know before entering the home that "two minors, and an adult child of Mrs. Jones with Asperger's resided in the home." (DN 45, ¶ 43). Any allegations of excessive force used in the execution of the warrant cannot reasonably be connected to the Risk Assessment Matrix. Because they have failed to plead

that the Risk Assessment Matrix caused their injury, their Fourth Amendment claim against Louisville Metro related to the Risk Assessment Matrix is dismissed.

*       *       *

For the reasons stated, Louisville Metro and the officers' motions will be granted in part and denied in part.

Justin R Walker, District Judge
United States District Court

August 31, 2020