UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-265-RGJ

NASHAYLA JONES, ET AL.                                          Plaintiffs

v.

LOUISVILLE/JEFFERSON COUNTY                                     Defendants
METRO GOVERNMENT, et al.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants, Sergeant Thomas Schardein, Officer Jeremy Boehnlein, Officer Aaron Browning, Officer Joel Casse, Officer P. Cobb, Officer Vadim Dale, Officer Mark Granholm, Officer Brandon Hogan, Officer M. King, Officer David Ledbetter, Officer Shannon Parks, Officer Luke Phan, Officer Christopher Priel, Officer Anthony Roberts, Officer Brent Routzahn, Officer John Seymour, Officer Scott Walker, Officer Daniel Weedman, Officer Chris Wells, and Officer Daniel Zummach (collectively, "Defendants") move for Summary Judgment. [DE 138].[1] Plaintiff Nashayla Jones ("Jones"), individually and as the parent and guardian of the minor child, N.J., ("Plaintiffs") responded [DE 141] and Defendants replied [DE 146]. For the reasons below, Defendants' Motion for Summary Judgment [DE 138] is **GRANTED** in part and **DENIED** in part.

**I.      BACKGROUND**

The background has been previously set forth in the Court's Orders [DE 44; DE 77; DE 126] and is incorporated. In 2017 the Louisville Metro Police Department executed a search warrant on Plaintiffs' residence. [DE 77 at 1062-63]. The search resulted from an investigation

---

[1] Defendants moved to Exclude Expert Testimony of Matthew Greimel [DE 137] which they included again as part of their motion for Summary Judgment. The Court will therefore consider both in the same analysis.

1

into Plaintiff's husband, a known narcotics trafficker, Jihad Haqq. [DE 138-1 at 2668; DE 141 at 2983]. In executing the search warrant, Officer Seymour, Officer Dale, and members of a SWAT team breached Plaintiff's door and entered their kitchen. [DE 142-1 at 3024]. Upon entry, the officers encountered one of Plaintiff's dogs, a pit bull. [*Id.*]. Officer Seymour shot and killed the dog.[2] As he left the kitchen, Officer Seymour encountered another dog, also a pit bull, that was not acting aggressively and was not shot. [DE 142-1 at 3027]. A third dog, a chihuahua/yorkie mix, was also present in the house and was not shot. [*Id.* at 3230]. Officer Dale proceeded downstairs to the basement along with other officers. [DE 142-2 at 3160]. Officer Dale did not encounter a dog at the scene and was not present when the dog was shot. [DE 142-2 at 3163]. Plaintiff's minor daughter, N.J and the chihuahua/yorkie mix were in N. J.'s room during the search. [DE 142-3 at 3231]. Officers entered her room and detained her during the execution of the warrant. [*Id.* at 3230]. N.J. heard the shot and attempted to go to her dog but officers stopped her from leaving the room. [DE 142-3 at 3231].

In 2018, Plaintiffs sued Metro Government and various state and federal law enforcement officers in their individual and official capacities. [DE 1]. Plaintiffs' remaining claims are (1) Jones' § 1983 Excessive Force claim against Officer Schardein, (2) Jones' state law outrage claim against Officer Schardein, (3) N.J.'s § 1983 Excessive Force claims against all defendants except Officer Schardein and N.J.'s state claims of (4) false imprisonment, (5) assault, (6) trespass to chattel, (7) conversion, (8) negligence, and (9) wanton negligence against all Defendants except Officer Schardein. Defendants assert qualified immunity as to all claims.

---

[2] The parties agree that Officer Seymour was the one to shoot the dog, although they disagree over whether the dog was acting aggressively or not. In his deposition, Officer Seymour testified that the dog was in the kitchen "growling, snarling, barking, teeth baring and advancing toward me." [DE 142-1 at 3204]. Plaintiff's daughter, N.J. testified that the dog was shot while running down the hallway away from the officers. [DE 142-3 at 3231.]

## II. MOTION FOR SUMMARY JUDGMENT

### a. Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### b. Discussion

#### A. *Qualified Immunity for § 1983 Claims*

To state a claim under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). "If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). "But officers sued under the aegis of § 1983 are protected from liability by the doctrine of qualified immunity." *Id*. "Qualified immunity shields the officers from suit if (1) they did not

4

violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not clearly established when they acted." *McGrew v. Duncan*, 937 F.3d 664, 667 (6th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (internal quotation marks omitted). These two steps may be addressed in any order. *Pearson*, 555 U.S. at 236. But "both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). If either is not satisfied, "qualified immunity will shield the officer from civil damages." *Id*.

1. Constitutional Violation – Excessive Force

   a. Clearly Established Right

The Fourth Amendment protects against unreasonable seizures of an individual's property. U.S. Const. amend. IV. The Sixth Circuit has acknowledged that "there is a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized," and that the unreasonable killing of a dog constitutes an unconstitutional seizure. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016). In describing the contours of that right in *Brown*, the court noted that a "seizure becomes unlawful when it is more intrusive than necessary." *Id*. at 568 (citing *Florida v. Royer*, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). In determining whether a seizure of a dog was more intrusive than necessary, it reiterated the Supreme Court's holding that "a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion' and determine whether 'the totality of the circumstances justified [the] particular sort of . . . seizure.'" *Id*. (quoting *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)). The court determined that this "constitutional right under the Fourth Amendment to

5

not have one's dog unreasonably seized . . . was clearly established in 2013." *Brown*, 844 F.3d at 566–67. As a result, it was clearly established when Officer Seymour shot Plaintiff's dog on April 27, 2017.

### b. Constitutional Deprivation

Having determined the right at issue was clearly established, the Court must consider whether the officer violated that right when it shot Plaintiffs' dog. When evaluating whether "a police officer's use of deadly force against a dog while executing a warrant to search a home for illegal drug activity is reasonable under the Fourth Amendment," the court must determine whether "given the totality of the circumstances and viewed from the perspective of an objectively reasonable officer, the dog poses an imminent threat to the officer's safety." *Brown*, 844 F.3d at 568. The court defined the requisite imminent threat as "'[a]n immediate, real threat to one's safety that justifies the use of force in self-defense,' or '[t]he danger resulting from an immediate threatened injury sufficient to cause a reasonable and prudent person to defend himself or herself.'" *Id*. at 567 (quoting Imminent Danger, BLACK'S LAW DICTIONARY (10th ed. 2014)). At this stage of the case, the Court is required to view the facts in the light most favorable to Plaintiffs, even when the only genuine dispute is created by a plaintiffs' "uncorroborated testimony" about the incident. *Brown*, 844 F.3d at 571; *see Robinson v. Pezzat*, 818 F.3d 1, 8-10 (D.C. Cir. 2016) (finding that the district court erred in holding that the dog owner's uncorroborated testimony failed to create a genuine dispute of material fact).

Plaintiffs assert that there is a genuine dispute as to the material fact of whether Officer Seymour and Officer Dale acted reasonably in shooting and killing their dog.[3] Plaintiffs point to

---

[3] As explained in section D, *infra*, the Court only addresses Plaintiff's argument regarding qualified immunity for Officer Seymour and Officer Dale as they made no argument regarding the other eighteen defendant officers.

6

the difference between her deposition testimony and Officer Seymour's. Defendants assert that there is no genuine dispute as to the material facts and cite the same deposition testimony.

### i. Officer Seymour

Officer Seymour described the events that led to him shooting the dog as follows:

> Q. Okay. Then it says, upon entry I flowed into the kitchen where I encountered a vicious pit bull; is that correct?
> A. That's correct, yes.
> Q. Who else was in the kitchen with you?
> A. I can't recall.
> Q. Okay. What were the actions of —
> A. There was nobody in front of me.
> Q. Okay. When you encountered the pit bull — excuse me. What as the location of the other operators that you entered with?
> A. No one was in front of me nor beside me, they would all have been behind me or going down to the lower level.

[Depo. John Seymour, DE 142-1 at 3024.].

> Q. All right. And this is — you're referring to the — what you described as the vicious pit bull in the kitchen —
> A. That's —
> Q. — the same dog?
> A. That's correct.
> Q. And then it states, I shot it with one round, killing it. Did anybody else shoot at it?
> A. No.
> Q. And you fired one round, so you fired one shot?
> A. Correct.
> Q. Do you remember where it hit the animal?
> A. In the head.
> Q. Was that an instantaneous death?
> A. Instantaneous, yes.
> Q. And what location in the house did the animal drop or its carcass finally come to rest?
> A. In the kitchen.

[*Id.*]

> Q. What do you mean by encountered, then? That's what I'm trying to figure out, exactly what— how that event transpired. So what do you mean in your answer when you said you encountered it?

7

A. I met it, it came at me. The dog was in the kitchen. As I made entry into the kitchen I probably challenged the dog because I challenge all dogs, you know, get gone, holler at them, and at that point it came at me in a very aggressive manner.

[*Id*. at 3028.].

Q. Okay. And you've described what the dog's behavior was. What specifically among the features that you have described before were the basis of your belief or concern that put you in some kind of fear?

A. One being that even after the noise flash distraction device was deployed right at it, it was still there and advancing toward me, growling, snarling, barking, teeth baring and advancing toward me.

[*Id*. at 3041].

N.J's testified to the event as follows:

A. I was on my knees. You can -- I can see the hallway, because that's where he -- my door was open and that's where he ran. He was running to me, trying to get to me and, by the time he had got right here to the gate, they already shot him. So I seen that.
Q. So he ran to the gate in your room after he had been shot.
A. No. He had been shot when he was running to the gate, like trying to get to me. They shot him once he got to the gate like.
Q. So he got to the gate and then they shot him?
A. He was running down the hallway, yeah.
Q. He was shot while running down the hallway?
A. Yes. And I already -- I had seen — I had seen his little -- like his beak, like his nose, because he tried to come to the -- get to me. I seen him like come through an try to run back and he was already shot after he —
Q. What happened to him after he got to the gate in your room?
A. After he got to the gate?
Q. Yes.
A. He was shot. He didn't get to — he almost got to me.
Q. Okay. He got shot and died in the hallway?
A. Yes.

\*\*\*

Q. Let me ask a different or better question. Was he running toward any one of he officers at the
time he was shot?
A. No.
Q. So he was shot while running away or toward your room --
A. Yes

8

[Depo. N.J, DE 142-3 at 3231].

Whether Plaintiff's dog was running away from the officer or coming at him in an aggressive manner is an important distinction because a dog's aggressiveness often goes to the heart of whether it presented an imminent threat. *Richards v. City of Jackson, Michigan*, 788 F. App'x 324, 335 (6th Cir. 2019) (holding that a jury could reasonably find that "a growling dog standing several feet away from the officer does not present the same type of imminent threat as a dog who is lunging toward the officer."). It is fundamental that a judge may not make credibility determinations or otherwise weigh the evidence when ruling on a summary-judgment motion; such functions are for the finder of fact after a trial. *See Anderson* , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An exception exists where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In *Harris*, for instance, because a video recording "quite clearly contradict[ed]" the plaintiff's version of events, the Court disregarded the plaintiff's testimony on summary judgment. *Id*. at 378, 127 S.Ct. 1769. In this case, by contrast, we have differing verbal accounts of what took place inside the apartment, neither of which is belied by "objective evidence in the record." *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir.2011).

Officer Seymour described the dog's behavior toward him as aggressive, "growling, snarling, barking, teeth baring and advancing toward me." [*Id*. at 3041.]. Officer Seymour then testified that he shot the dog in the kitchen in the head, where it dropped immediately. [DE 142-1 at 3024]. He further stated that the "location in the house [where] the animal drop[ped] or its carcass finally c[a]me to rest" was in the kitchen. [*Id*.]. He later testified again that the dog's "final resting spot" was underneath a gray blanket in the kitchen after it was shot. [*Id*. at 3038]. In

9

contrast, N.J. testified that the dog "was shot while running down the hallway . . . he got shot and died in the hallway." [DE 142-3 at 3231]. N.J specifically stated that the dog "was shot in the hallway and didn't move anymore." [DE 142-3 at 3232]. As a result of the testimony, a genuine dispute exists as to whether the dog was aggressively advancing on Officer Seymour or running away from him when it was shot, which is material to whether Officer Seymour was in imminent danger and whether the force used was excessive.

Viewing the evidence in the light most favorable to Jones, a reasonable juror could find that Officer Seymour violated Plaintiff's clearly established constitutional rights, that his actions constituted excessive force, and were objectively unreasonable. As a result, Defendant's motion for summary judgment as to the § 1983 claim against Officer Seymour is **DENIED**.

###         ii.    Officer Dale

Plaintiffs also claim that the deposition testimony of Officer Dale establishes a genuine dispute at to the material fact of whether Officer Dale acted reasonably in shooting and killing their dog. Plaintiffs point to three main sections of testimony:

> Q. Okay. What actions were taken to address the allegedly — the dog that you described as aggressive?
> A. I didn't take any actions toward the dog.
> Q. You said the dog was neutralized, so what actions were you aware of that led you to write down the dog was neutralized?
> A. That one of us had to neutralize the dog because of its aggressive manner.
> Q. Okay. And that means shooting the dog?
> A. Yes, sir. Typically, yes.
> Q. And Officer Seymour fired his weapon at the dog?
> A. I believe it was Officer Seymour.
> Q. And you fired your weapon at the dog?
> A. No, I did not.
> Q. You fired your weapon during the course of this raid while you were inside the house, didn't you?
> A. No, I did not.

[DE 142-2 at 3163].

10

\*\*\*

> Q. Okay. But you were present when it happened?
> A. No, I wasn't.

[*Id*].

Officer Dale also testified that he does not even recall a dog at the scene:

> Q. All right. But both of you-all are focused on the dog and — but you don't know what the correct — whether a flash-bang is appropriate to deter a dog, are you, at this time?
> A. I'll be honest, I don't even recall seeing the dog. Again, that was a comment made on behalf of our team when we entered.
> Q. So you don't even remember seeing the dog —
> A. No.
> Q. — any dog when you went inside the house?
> A. Nope.

[*Id*].

Plaintiffs argue that a genuine dispute arises out of Officer Dale's allegedly inconsistent testimony, claiming that "[n]othing can be more apparent than an officer falsifying records saying that that a dog that was shot by his follow officer was aggressive, when in fact he later tells the truth that he never seen [sic] the dog to say it was aggressive." [DE 141 at 2991]. Even viewing these facts in the light most favorable to plaintiff, they do not create a genuine dispute as to any material fact. Officer Dale's testimony —that Plaintiff's themselves points the Court to— is that he did not take any actions toward the dog, he did not fire his weapon at the dog, and that he was not present when it happened. Indeed, even under Plaintiff's version of the facts, Officer Dale never saw the dog that was shot. As a result, there is not a genuine dispute as to any material fact

11

related to N.J.'s § 1983 claim against Officer Dale.[4] Defendants' motion as to the § 1983 claim against Officer Dale is **GRANTED**.

### iii. Other Defendant Officers

Plaintiffs do not respond to Defendants' arguments regarding qualified immunity for the other eighteen of the twenty named defendants in this case. As a result, Defendants assert that all claims should be dismissed except those against Officer Seymour. Defendants claim that because "[t]here is no mention of the actions taken by any of the other Defendants named in this case," the holding in *Arceo v. Salinas* . . . "warrants the dismissal of all § 1983 claims against the other named Defendants." [DE 146 at 9]. Defendants' reliance on *Arceo* is misplaced. The language Defendants cite from *Arceo*, the "failure to specifically state the alleged acts that any named Defendant has committed," refers to a failure to adequately state a claim in a complaint. *Arceo*, 2014 WL 4187359, at *2 (E.D. Cal., August 21, 2014). The court in *Arceo* was noting the pleading standard for screening pro se prisoner complaints under Rule 8(a)(2) of the Federal Rules of Civil Procedure; it was not addressing the sufficiency of evidence at the summary judgment stage.

---

[4] And in any event, Officer Dale's statements about the dog's aggressiveness are not inconsistent, much less indicative of him falsifying records. The Court "cannot ignore the context within which evidence . . . was given." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir.1992). When viewed in the context of the rest of his testimony, Officer Dale explains in his deposition why he stated the dog was aggressive even though he did not see it:

> Q. Well, you were aware of the dog, weren't you, because you said it was an aggressive dog?
> A. I think that was a broad comment made on the paperwork because of discussions.
> Q. Okay. What discussions are you talking about?
> A. Once we all probably got in the SWAT van and were discussing what happened when we made entry and so that was a — sort of a generalized comment that we, the team, encountered an aggressive dog and that dog was neutralized.

[DE 142-2 at 3163].

In any event, it is true that Plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. As a practical matter, "it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011). Even so, simply because a party "offer[s] no timely response to [a] [] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.1979)). This is because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *F.T.C.*, 767 F.3d 611 at 64. Therefore, even where a motion for summary judgment is unopposed, a district court must carefully review the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists.[5] On a motion for qualified immunity, the burden shifts to the plaintiff to establish the defendant is not entitled to qualified immunity. *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011). A court may rely "only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Neely v. Good Samaritan Hosp.,* 494 F. Supp. 2d 837, 840 (S.D. Ohio 2007) (*see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915

---

[5] Yet "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989).

n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ").

Defendants have raised the defense of qualified immunity and Plaintiff's failure to respond supports judgment for Defendants since Plaintiff have not met their burden. Even so, "the trial court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy . . . for a silent party." *Id*. Plaintiffs have offered no evidence in support of their claims beyond the allegations of their verified complaint. Although a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment," allegations in a verified complaint alone cannot by themselves defeat summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). To constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit—and, thus, a verified complaint— "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Courts thus evaluate whether claims in affidavits submitted at summary judgment are made from personal knowledge. *See, e.g.*, *Totman v. Louisville Jefferson Cnty. Metro. Gov't*, 391 F. App'x 454, 463 (6th Cir. 2010) (finding that plaintiff's verification "that his first amended complaint 'is true and correct to the best of [his] knowledge and belief'" "indicate[d] that the allegations of the complaint go beyond [the plaintiff's] personal knowledge and extend to matters within [his] belief" and that allegations based only on beliefs "do not meet the evidentiary standard set forth in . . . the Federal Rules of Civil Procedure" (first alteration in original)); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by" Rule 56). The burden to establish that a witness has personal knowledge of the

statements made in an affidavit or verified complaint falls to the party relying on that testimony. *See Wilson v. Budco,* 762 F. Supp. 2d 1047, 1057 (E.D. Mich. 2011).

The alleged facts in the Second Amended Complaint supporting N.J.'s § 1983 excessive force claims are made upon "information and belief," not the personal knowledge of the Plaintiffs. [DE 45]. The facts supporting Nashayla Jones' excessive force claim against Schardein similarly lack personal knowledge. Such claims "do not meet the evidentiary standard set forth in . . . the Federal Rules of Civil Procedure" *Totman*, 391 F. App'x 454 at 464. Having reviewed the verified Second Amended Complaint, and the portions of the record submitted by Defendants, the Court finds that a genuine dispute of material fact does not exist as to N.J.'s § 1983 Excessive Force claims against all defendants except Officer Seymour. *See, e.g.*, *Winter v. City of Westlake, Ohio*, No. 1:16CV1753, 2018 WL 838283, at *9 (N.D. Ohio Feb. 13, 2018) (granting summary judgment based on qualified immunity where plaintiff failed to argue against defendant's motion for qualified immunity and no evidence weighed against granting qualified immunity). As a result, Defendants' motion as to these claims is **GRANTED**.

### B. Qualified Immunity for State Law Claims

Qualified official immunity under Kentucky law offers immunity from tort liability to public officers for acts performed in the exercise of their discretionary functions. *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001). As explained in *Yanero*, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (citations omitted). "Once the officer . . . has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct

15

or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

In their motion, Defendants make only a cursory argument for the granting of qualified immunity on the state law claims, and argue simply that Plaintiffs have not produced evidence to warrant denial of qualified immunity. [DE 138-1 at 2972]. Plaintiffs do not respond at all to the state-law qualified immunity argument in their response and address only the issue of qualified immunity for the § 1983 claims. [DE 141 at 2991]. Defendants in their reply pivot back to the issue of qualified immunity for the § 1983 claims and do not address state-law qualified immunity. [DE 146]. In their pre-trial memorandum, Plaintiffs do not outline any state law claims to be decided at trial. [DE 154]. As a result, it is unclear to the Court what state-law claims Defendant is moving for summary judgment on, or if Plaintiffs are pursuing any of those claims. As a result, the Court cannot make a determination as to qualified immunity for any state-law claims. The parties are ordered to be prepared to advise the Court at the pre-trial conference which, if any, state law claims remain. Defendant's motion as to all state law claims is therefore **DENIED** at this time.

### III. Motion to Exclude Plaintiff's Expert Testimony

Defendants move to exclude the testimony of Plaintiff's expert, Matthew Greimel, which was also filed on May 31, 2023 (DN 137). Defendants cite LR 7.1(c), which states that "failure to respond to a motion may be grounds for granting the motion."[6] Plaintiffs respond that "no expert witness is required here in this case," [DE 141 at 2991], but does not respond to Defendants' motion to exclude. As a result, the Court will treat the motion as unopposed. "[I]ssues adverted to

---

[6] Defendant's argument that Plaintiff cannot prove excessive force without expert testimony lacks merit; the Sixth Circuit has observed expert testimony is not required to prove excessive force. *Lunneen v. Vill. of Berrien Springs, Michigan*, No. 22-2044, 2023 WL 6162876, at *8 (6th Cir. Sept. 21, 2023) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 (7th Cir. 2010) (rejecting the argument that expert testimony is required for an excessive force claim)).

in a perfunctory manner, unaccompanied by some effort at developed argumentation," of course, "are deemed waived." *Wilson v. Pinnacle Foods Inc.*, No. 3:19-CV-229-BJB, 2022 WL 419595, at *16 (W.D. Ky. Feb. 10, 2022) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Scott v. Tennessee*, 878 F.2d 382, *2 (6th Cir. 1989) (failing to respond to or oppose a motion waives opposition). As a result, the Court **GRANTS** Defendant's Motion to Exclude any expert testimony by Matthew Greimel.

### IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment [DE 138] is **GRANTED in part and DENIED in part**;

(2) The Court **GRANTS** summary judgment to Defendants on all § 1983 Excessive Force claims against all Defendants except Officer Seymour.

(3) The Court **DENIES** summary judgment to Defendants on all state law claims.

(4) The parties are **ORDERED** to be prepared to advise the Court at the pre-trial conference which, if any, state law claims remain.

(5) Defendants' Motion to Exclude Expert Testimony of Matthew Greimel [DE 137] is **GRANTED**.

*Rebecca Grady Jennings, District Judge*
*United States District Court*

November 3, 2023